Marita K. BOYCE

v.

SCHOOL DISTRICT OF PHILADELPHIA, Michael P. Marcase, Superintendent of Schools, School District of Philadelphia, and Murray Bookbinder, Executive Director of Personnel and Labor Relations, School District of Philadelphia.

Civ. A. No. 77–3454.

United States District Court,
E. D. Pennsylvania.

March 16, 1978.

Margaret M. Boyce, Philadelphia, Pa., for plaintiff.

Vincent J. Salandria, Law Dept., School Dist. of Philadelphia, Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

This is a civil rights action for allegedly unconstitutional dismissal from public employment. The plaintiff, Marita K. Boyce, alleges that she was employed by the School District of Philadelphia until her dismissal in the spring of 1976; that on March 6, 1976, she was informed "that she was being laid off from her job"; that after exhaustion of accumulated vacation pay, she was removed from the School District's payroll on April 13; and that she has never received any official notice from the School District that she was terminated, and all attempts to gain rehire have been spurned, although several other employees who were laid off with her have since been rehired through the intercession of various political leaders. Plaintiff alleges further that she was discharged because of her political opposition to Philadelphia Mayor Frank L. Rizzo:

> "14. . . . Boyce was informed that School District of Philadelphia officials terminated Plaintiff because she was anti-Rizzo, supported Louis Hill in the 1975 Democratic [Mayoral] Primary, and had made allegedly slanderous remarks concerning Mayor Rizzo and his administration.
>
> . . . . .
>
> 22. After inquiry, Plaintiff has been advised that she was fired for political reasons and that she would not be rehired for the same reasons. Further, she was

informed that she was fired because of the political beliefs of certain members of her family which adversely reflected on her."

The complaint characterizes plaintiff's dismissal as "retaliation for her expression of opinion and that of members of her family on matters of public concern."

Plaintiff instituted this action on October 7, 1977, naming as defendants the School District; its superintendent, Michael P. Marcase; and its personnel director, Murray Bookbinder. The action is asserted under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985, 1986, and jurisdiction is based on 28 U.S.C. §§ 1343, 1443.[1] Plaintiff contends that the defendants acted under color of state law and that the dismissal violated her right to freedom of speech and association. She seeks damages and equitable relief.

Defendants have moved to dismiss the action for lack of jurisdiction (Fed.R.Civ.P. 12(b)(1)) and failure to state a claim upon which relief can be granted (Fed.R.Civ.P. 12(b)(6)). Their main contention is that the conduct of which plaintiff complains was not considered unconstitutional under legal precedents at the time of the dismissal and that subsequent judicial decisions favoring plaintiff's position should not be applied retroactively. They also contend that the claim under 42 U.S.C. § 1986 is barred by the statute of limitations. The School District contends further that as a governmental entity it cannot be held liable under the 1871 Civil Rights Act. I shall discuss the latter contention before addressing the other two.

The Civil Rights Act of 1871 only imposes liability on "persons", and it is now firmly established that state governmental entities are not "persons" within the meaning of that statute. See City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Moor v. County of Alameda, 411 U.S. 693, 706–10, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); Monroe v. Pape, 365 U.S. 167, 187–92, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In this case, plaintiff sues the School District itself as an entity; she is not suing the members of its governing school board individually. Of course, school districts are Pennsylvania governmental units. See generally Public School Code of 1949, §§ 201–298, as amended, 24 Pa.Stat.Ann. §§ 2–201 to 2–298 (Purdon); First Class City Public Education Home Rule Act, 53 Pa.Stat.Ann. §§ 13201 et seq. (Purdon). They therefore should not be subject to 1871 Act liability. I recognize that there have been cases in which liability has been imposed on school districts under this statute.[2] See, e. g., Brenden v. Independent School District 742, 342 F.Supp. 1224, 1229 & n.5 (D.Minn.1972) (citing cases), aff'd, 477 F.2d 1292 (8th Cir. 1973). I also recognize that this question has been left open by past decisions of the Supreme Court (see Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 279, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)), and that it is before the Court this term (Monell v. Department of Social Services, cert. granted, 429 U.S. 1071, 97 S.Ct. 807, 50 L.Ed.2d 789 (1977)[3]). To me, however, the

1. Section 1343 authorizes district court jurisdiction over civil rights actions and is a proper basis for jurisdiction in this case. Section 1443 only applies to removal of actions originally instituted in state court, and, since this case is not such an action, the section has no applicability to this case.

2. Many of these cases were decided not on the basis of any distinction between school districts and other governmental entities for purposes of the 1871 Act definition of "person" but rather on the rationale that the plaintiff was seeking equitable relief and the Supreme Court's decision in Monroe v. Pape, supra, only applied to cases in which damages are sought.

See, e. g., Harkless v. Sweeny Independent School Dist., 427 F.2d 319, 321–23 (5th Cir. 1970), cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971). That rationale was rejected by the Supreme Court in City of Kenosha, supra.

3. On review of 532 F.2d 259, 262–64 (2d Cir. 1976) (holding New York City Board of Education is not a "person" within the meaning of the 1871 Act). The writ of certiorari was limited to the second question presented in the petition:

"Are local governmental officials and local independent school boards 'persons' within meaning of 42'U.S.C. § 1983 when equitable

correct resolution of this question appears clear: governmental entities, including school districts, are not "persons" within the meaning of the 1871 Act. I therefore adhere to my recent holding in *Lewis v. School District of Bristol Township*, 443 F.Supp. 923, 924 (E.D.Pa.1978), that a school district may not be held liable under the Civil Rights Act of 1871.

■ Defendants contend that plaintiff's allegations fail to state a claim upon which relief can be granted because under legal precedents at the time of plaintiff's dismissal their action was not unlawful. In particular, they point to *American Federation of State, County and Municipal Employees v. Shapp*, 443 Pa. 527, 280 A.2d 375 (1971), in which the Supreme Court of Pennsylvania held that dismissal for political reasons of public employees hired through the patronage system does not violate the United States Constitution or the 1871 Civil Rights Act. *Accord, Nunnery v. Barber*, 503 F.2d 1349 (4th Cir. 1974), *cert. denied*, 420 U.S. 1005, 95 S.Ct. 1448, 43 L.Ed.2d 763 (1975). They contend further that more recent decisions favorable to plaintiff's position—particularly *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)—should not be applied retroactively.

*Elrod* was decided on June 28, 1976, more than two months after plaintiff was removed from the Philadelphia School District's payroll. In *Elrod*, Cook County, Illinois, Sheriff's Office employees affiliated with the Republican Party were discharged upon the election of a sheriff who was a member of the Democratic Party; the sole reason for the discharge was that the employees were not Democrats. A divided Supreme Court affirmed the holding of the Seventh Circuit Court of Appeals that the dismissal violated the Constitution. In a plurality opinion, Justice Brennan, joined by Justices White and Marshall, stated in broad terms that patronage dismissals violated First Amendment freedoms of political belief and association. 427 U.S. 349–74,

96 S.Ct. 2673. Justice Stewart, joined by Justice Blackmun, concurred in the judgment, declaring:

"The single substantive question involved in this case is whether a nonpolicy-making, nonconfidential government employee can be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs. I agree with the plurality that he cannot."

*Id.* at 375, 96 S.Ct. at 2690.

Plaintiff contends that she has stated a cause of action under *Elrod* and that the *Elrod* holding should be applied retroactively to the date of her dismissal. In making this argument, she notes that the Seventh Circuit's decision in *Elrod* (509 F.2d 1133) was rendered on January 30, 1975, long before plaintiff's dismissal, and that the action had been before the Supreme Court since its grant of certiorari on October 6, 1975 (423 U.S. 821, 96 S.Ct. 33, 46 L.Ed.2d 37). It is also noteworthy that the Seventh Circuit's ruling was based on a 1972 decision which had reached the same result, *Illinois State Employees Union, Council 34 v. Lewis*, 473 F.2d 561 (7th Cir. 1972), *cert. denied*, 410 U.S. 943, 93 S.Ct. 1370, 35 L.Ed.2d 609 (1973).

There is a division of authority as to whether *Elrod* should be applied retroactively. *Compare Ramey v. Harber*, 431 F.Supp. 657 (W.D.Va.1977) (is retroactive) *with Litwhiler v. Hidlay*, 429 F.Supp. 984 (M.D.Pa.1977) (is not retroactive). *See generally Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) (setting forth criteria for decision of retroactivity questions in civil cases). In *Rosenthal v. Rizzo*, 555 F.2d 390 (3d Cir. 1977), *cert. denied*, 434 U.S. 892, 98 S.Ct. 268, 54 L.Ed.2d 178 (1977), the Third Circuit applied *Elrod* principles to a patronage dismissal which occurred two and one-half years before the *Elrod* decision, but the Court never discussed the retroactivity issue and, since the question apparently was

---

relief in nature of back pay is sought against them in their official capacities?"
45 U.S.L.W. 3090 (July 27, 1976).

The case was argued on November 2, 1977. 46 U.S.L.W. 3304 (Nov. 8, 1977).

not presented, the case is not an authoritative precedent. In the instant case, even if *Elrod* applies retroactively, it is not specifically controlling since plaintiff was not fired because of her political *party* affiliation—she and the persons who fired her are all Democrats. In any event, I conclude that I need not decide the applicability of *Elrod* to this case, for I hold that, even considering only those decisions predating plaintiff's dismissal, plaintiff has stated a claim for relief.

In *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the Supreme Court held that the dismissal of a public school teacher because of that teacher's public criticism of the school district's taxation and program funding policies was unconstitutional. The Court noted that some of the teacher's statements were factually correct and were not of a type that would affect faculty discipline or harmony (391 U.S. at 569–70, 88 S.Ct. at 1737). Other statements were erroneous, but dealt with "issues then currently the subject of public attention," and were "critical of his ultimate employer, but [were] neither shown nor [could] be presumed to have in any way either impeded the teacher's proper performance of his daily duties in the classroom or to have interfered with the regular operation of the schools generally." *Id.* at 572–73, 88 S.Ct. at 1737 (footnote omitted). The Court then concluded that, "in a case such as this, absent proof of false statements knowingly or recklessly made by him, a teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment." *Id.* at 574, 88 S.Ct. at 1738 (footnote omitted).

In *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Court considered a state college's refusal to renew a teaching contract on the alleged ground that the teacher had made public statements critical of the policies of the college's Board of Regents. The district court granted summary judgment for the college officials on the ground that the teacher had no cause of action since he did not have a property right in his job. The Court of Appeals reversed, holding that existence of a property right was not necessary to state a claim for violation of freedom of speech and that the record contained a factual dispute on the free speech question. Affirming the Court of Appeals' decision, the Supreme Court stated:

> "The [teacher] has alleged that his nonretention was based on his testimony before legislative committees and his other public statements critical of the Regents' policies. And he has alleged that this public criticism was within the First and Fourteenth Amendments' protection of freedom of speech. Plainly, these allegations present a bona fide constitutional claim. For this Court has held that a teacher's public criticism of his superiors on matters of public concern may be constitutionally protected and may, therefore, be an impermissible basis for termination of his employment. *Pickering v. Board of Education, supra.*"

408 U.S. at 598, 92 S.Ct. at 2698.

At the time of Boyce's dismissal, *Pickering* and *Perry* were the leading cases on the question of discharge from public employment for exercise of First Amendment rights. As the citations in the plurality opinion in *Elrod* indicate, however, the Supreme Court had decided many other cases dealing with the general problem. The conclusion is inescapable that at the time of plaintiff's dismissal it was well established that discharge from public employment could not be effectuated to penalize freedom of expression.

It is true that the thrust of the allegations in the complaint is that Boyce was discharged because of her political beliefs and associations. Boyce also alleges, however, that she was dismissed because she "had made allegedly slanderous remarks concerning Mayor Rizzo and his administration" and "in retaliation for her expression of opinion and that of members of her family on matters of public concern." These averments set forth a claim within the ambit of *Pickering* and *Perry*, and therefore this action may not be dismissed.

Again, because I am able to dispose of defendants' motion on this ground, I express no view as to whether plaintiff also states a claim for relief merely because her dismissal was politically motivated.

 Defendants' final contention is that the claim under 42 U.S.C. § 1986 should be dismissed because it is barred by the statute of limitations. Section 1986 is that part of the 1871 Civil Rights Act which provides a cause of action for knowing failure to prevent certain conspiratorial actions prohibited by another provision of the statute, § 1985. Generally, actions under the 1871 Act are governed by the analogous limitations periods of the forum state. *See O'Sullivan v. Felix*, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980 (1914), *cited in Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). Section 1986, however, provides that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." Plaintiff was laid off on March 6, 1976 and removed from the payroll on April 13, 1976. Suit was not commenced until October 7, 1977.

Plaintiff makes the following argument in support of the assertion that the § 1986 claim is not time-barred:

"Plaintiff never received official notification of her lay-off nor that she was dismissed. Plaintiff's present status is that of a laid-off employee. She was never officially terminated from her employment but has surmised from events that her dismissal is permanent, being politically motivated. At all times, the defendants assured plaintiff she would be rehired and put back to work. In fact, it was not until plaintiff instituted this lawsuit that plaintiff realized the finality of her situation. Plaintiff contends that her cause of action did not accrue until she became aware that all other dismissed employees, except her, had been rehired." Plaintiff's Brief at 10.

It is a well-established rule that if a defendant has fraudulently concealed facts which would disclose the existence of a cause of action, the limitations period is not tolled until the plaintiff discovers or should have discovered facts giving rise to the action. *See, e. g., Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874); *Kansas City v. Federal Pacific Electric Co.*, 310 F.2d 271 (8th Cir.), *cert. denied*, 371 U.S. 912, 83 S.Ct. 256, 9 L.Ed.2d 171 (1962); *Pollard v. United States*, 384 F.Supp. 304 (M.D.Ala.1974). This complaint does not explicitly allege fraudulent concealment. The averments state that on March 6, 1976, plaintiff was told that she was being laid off and "was to go home immediately"; she complied with this order although she never received an official notice that she was laid off; she was "informed" of the political reasons for her dismissal in "subsequent conversations"; several employees laid off with her have since been rehired, some through political intercession; and "[a]fter inquiry" she learned she will not be rehired. The complaint is notably devoid of allegations as to when the rehirings of plaintiff's colleagues occurred or when plaintiff learned of her fate in the "subsequent conversations" and "[a]fter inquiry." It also fails to state what explanation, if any, was given plaintiff when she was told she was being laid off.

Reading the complaint in a light most favorable to plaintiff, as I must on this motion (*see, e. g., Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)), the averments may be construed to assert that defendants led plaintiff to believe that she was being laid off for reasons other than her exercise of First Amendment rights and that the true reasons for her dismissal were concealed from her until a later time. On such facts, the fraudulent concealment doctrine may be applicable, although, of course, it remains to be seen whether plaintiff should have known of the true reasons for her dismissal more than one year prior to the date of the institution of suit. Given the present posture of the case, therefore, the § 1986 claim should not be dismissed at this time. After a factual record has been developed on the question

of fraudulent concealment, the defendants may, if the facts warrant, renew their statute of limitations contention in a motion for summary judgment. The motion to dismiss the § 1986 claim will be denied.