Judith RODRIGUEZ de QUINONEZ et al., Plaintiffs, Appellants,

v.

Honorable Julio Cesar PEREZ, etc., et al., Defendants, Appellees.

No. 78–1296.

United States Court of Appeals, First Circuit.

Argued Nov. 7, 1978.

Decided March 30, 1979.

Rehearing Denied May 7, 1979.

A. J. Amadeo Murga, Hato Rey, P. R., for plaintiffs, appellants.

Lirio Bernal De Gonzalez, Asst. Sol. Gen., Department of Justice, with whom Hector A. Colon Cruz, Sol. Gen., San Juan, P. R., was on brief, for defendants, appellees.

Before ALDRICH, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Plaintiffs, three former directors of Banco Cooperativo de Puerto Rico, bring this suit under 42 U.S.C. § 1983 and 28 U.S.C. § 1343 against the Secretary of the Treasury of Puerto Rico and the directors appointed to take their places. They contend that their removal as directors by the defendant Secretary deprived them of liberty and property without due process of law, in violation of the fourteenth amendment to the Constitution.

Banco Cooperativo was organized under and is subject to the provisions of title 7, chapter 66 of the laws of Puerto Rico. Plaintiffs, three of the bank's twelve-mem-

ber board of directors, were elected to their positions for a three-year term by the general assembly of the bank's shareholders. Section 768a of chapter 66 authorizes the Secretary of the Treasury of Puerto Rico to suspend or remove directors. It provides,

"When the Secretary of the Treasury determines there is evidence that any director or officer of the Cooperative Bank of Puerto Rico has violated this chapter, the rules and bylaws promulgated hereunder or a final cease and desist order, or has performed acts contrary to sound banking practices in connection with the Bank, or has participated in them, or has committed or participated in the commission of any act, omission or practice constituting a violation of his fiduciary duties as director or officer of the Bank, and the Secretary determines that the Bank has sustained or will probably sustain a substantial financial loss or other prejudice on account of such violation or practice or failure to carry out his fiduciary responsibilities and that such violation or failure is one involving personal dishonesty on the part of the director or officer, the Secretary of the Treasury may issue a written order suspending or removing him from his position in that Bank."

Acting pursuant thereto, the Secretary removed plaintiffs prior to the expiration of their terms. A fourth director, not a party to this action, was also dismissed; the other five elected directors were not.

Arguing that removal without a prior or subsequent hearing deprived them of liberty and property without due process, plaintiffs seek a declaration that § 768a is unconstitutional, reinstatement to their positions as directors, damages, and attorneys' fees. Because it determined that no "property" or "liberty" interest within the fourteenth amendment was involved, the district court dismissed the complaint.

■ Plaintiffs rely on *Feinberg v. Federal Deposit Insurance Corp.*, 173 U.S.App. D.C. 120, 522 F.2d 1335 (1975) for the proposition that a directorship may be a property interest within the meaning of the fourteenth amendment. In that case, however, the plaintiff, who was president as well as director of a bank, was receiving a substantial salary, and it was the salary that the court specifically termed a "property" interest. *Id.*, 173 U.S.App.D.C. 125, 522 F.2d at 1340. In contrast, plaintiffs here do not receive a salary; a salary as such is forbidden by bank regulations although a "fixed sum" is allowed to be set to compensate for attendance at meetings, and directors may be compensated for outside services to the Board.[1] Plaintiffs' sole monetary receipts for serving as directors were $25 for each day's attendance at board meetings plus travelling expenses. The magistrate characterized this $25 per diem as a reimbursement for expenses and the district court accepted the magistrate's findings and determined that as there was no expectation of deriving any property interest from the position of director, no property interest within the meaning of the fourteenth amendment was involved. On this record, which fails to establish that a directorship of this nature carries with it collateral benefits capable of economic valuation, we uphold this determination.

■ There remains the question whether plaintiffs have a liberty interest in serving as directors which is protected by the fourteenth amendment. Apart from fundamental rights and rights guaranteed by one of the provisions of the Bill of Rights which has been incorporated into the fourteenth amendment (which is not involved here), interests comprehended within the meaning of fourteenth amendment liberty or property attain their constitutional

---

1. Regulation 10.08G of the Banco Cooperativo states:

"None of the Directors have as such a right to salary but the Board can from time to time set a fixed sum as compensation for the attendance of Board meeting or meetings of any authorized committee. The Board can also authorize payment for compensation which it considers reasonable for any and all of its members for services rendered to the Board that are not for assistance to the meetings of the Board of Directors or such committees."

status by virtue of the fact that they have been initially recognized and protected by state law, *Paul v. Davis,* 424 U.S. 693, 710, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), and the dimensions of these interests are shaped by state law. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Arguably, plaintiffs are in a position somewhat similar to that of the plaintiff in *Bishop v. Wood,* who claimed that a city ordinance conferred upon him a sufficient expectancy of continued employment to constitute a protected property interest. The ordinance provided: "If a permanent employee fails to perform work up to the standard of the classification held, or continues to be negligent, inefficient, or unfit to perform his duties, he may be dismissed by the City Manager." *Id.* at 344 n.5, 96 S.Ct. at 2077 n.5. The Supreme Court, noting that plaintiff's interpretation of the ordinance was a possible one, stated it could also be read as "merely conditioning an employee's removal on compliance with certain specified procedures," *Id.* at 345, 96 S.Ct. at 2078, and deferred to the district court's interpretation to the latter effect. Thus, the ordinance in *Bishop v. Wood,* while setting forth conditions for termination, committed the determination of the existence of those conditions solely to the City Manager. *See also Moore v. Otero,* 557 F.2d 435, 437 n.6 (5th Cir. 1977) (department's operating procedure which set forth the conditions upon which police corporals are appointed and retained did not confer a property interest but merely informed the chief of police's discretion). Section 768a may be open to an interpretation, in line with that given the ordinance in *Bishop v. Wood,* negating the existence of any fourteenth amendment interest in serving as a director, although three factors not present in *Bishop v. Wood* —the existence of a specific term (three years), the exceptional grounds for removal (dishonesty), and the fact that the appointing authority (the shareholders) differs from the removing authority (the Secretary)—point against such an interpretation. We do not pursue the matter further, how-

ever, because wholly apart from whether a directorship itself is an interest protected by the fourteenth amendment, we believe that adding the stigma of a discharge for dishonesty gives rise to such an interest.

■ While defamation by a governmental official, standing alone, does not work a deprivation of liberty protected by the fourteenth amendment, *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), governmental action altering a right or status previously held under state law "combined with the injury resulting from the defamation, justifie[s] the invocation of procedural safeguards." *Id.* at 708–09, 96 S.Ct. at 1164. *See also Ventetuolo v. Burke,* 596 F.2d 476 (1st Cir. 1979). The Fifth Circuit has capsulized the import of *Paul v. Davis* into the following "stigma-plus" test: " 'To establish a liberty interest sufficient to implicate fourteenth amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law'." *Dennis v. S & S Consolidated Rural High School District,* 577 F.2d 338, 341 (5th Cir. 1978), *quoting Moore v. Otero,* 557 F.2d at 437. We have said that "when a state holds out a right to citizens to engage in an activity on equal terms with others, a state-recognized status exists." *Medina v. Rudman,* 545 F.2d 244, 250 (1st Cir. 1976), *cert. denied,* 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 177. Here, title 7, chapter 66 of the laws of Puerto Rico sets forth general terms pursuant to which an individual may serve as a director; hence, we think the "plus" of the stigma-plus test is satisfied.

■ Clearly, furthermore, there was serious "stigma" here. The very act of removal under this statute necessarily brings into question the directors' integrity. The statutory grounds for removal, phrased in the conjunctive, require a determination by the Secretary that "there is evidence . . . that such [statutorily enumerated] violation

or failure is one involving personal dishonesty."[2]

It is true that, strictly read, the statute does not require an official determination or charge of dishonesty, but only a finding that there is sufficient "evidence" of dishonesty to warrant invoking the statute. This superfine distinction would have little practical effect, however, in reducing the clear imputation of dishonesty flowing from removal under this statute.[3] We thus think that removal from bank director status, as it is recognized by Puerto Rico law, on the ground of dishonesty, actual or suspected, affects a liberty interest requiring due process safeguards.

█ We turn next to the question of what process was due. We disagree with plaintiffs' contention that a pre-termination hearing was constitutionally required. There is particular justification for summary action in the banking field. In *Fahey v. Mallonee*, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947), a regulation authorizing the Federal Home Loan Bank Board, without prior hearing, to appoint a conservator to take possession of a bank's assets was challenged. The Supreme Court upheld the regulation stating that "the delicate nature of the [banking] institution and the impossibility of preserving credit during an investigation has made it an almost invariable custom to apply supervisory authority in this summary manner." *Id.* at 253, 67 S.Ct. at 1556. Similar reasons pertain to the removal of a director under the conditions set forth in § 768a. Requiring retention of plaintiffs as directors pending a hearing would severely hamper, if not curtail, the Commonwealth's ability to deal with a perceived economic crisis. We have affirmed the denial of a pre-termination hearing under circumstances where the intrusion into governmental functioning, while substantial, was much less obstructive than it would have been here. *Levesque v. Maine*, 587 F.2d 78 (1st Cir. 1978).

While, therefore, a pre-termination hearing was not required, opportunity for a

---

**2.** The conjunctive phrasing of § 768a distinguishes it from the disjunctive provision involved in *Mitchell v. King*, 537 F.2d 385 (10th Cir. 1976), a case upon which the district court relied. There, removal was allowed " 'for incompetence, neglect of duty, *or* malfeasance in office'." (emphasis supplied). *Id.* at 391.

**3.** The Secretary sent the following notification of removal to plaintiffs:

"Pursuant to the authority conferred upon me by Article 18A of the Law No. 88, enacted June 21, 1976, as amended, Law of the Banco Cooperativo de Puerto Rico, [7 L.P.R.A. § 768a] I hereby remove you from the position of member of the Board of Directors of the Banco Cooperativo de Puerto Rico for having participated in acts contrary to sound banking practices and having incurred in omissions or practices that constitute a violation of your fiduciary duties as directors that has had as result that the Bank has suffered a substantial financial loss."

Arguably, these allegations could be founded on exercises of poor business judgment rather than upon acts of dishonesty. As there is no indication in the record that this letter was published, we need not decide whether these charges alone could form the basis for a claim that plaintiffs' " 'good name, reputation, honor, or integrity' " have been impaired. *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976).

Plaintiffs also claim they were stigmatized by the Governor's speech televised approximately one week before their removal. Apart from the question whether there exists a sufficient nexus between the speech and plaintiffs' termination to remove it from the realm of simple governmental defamation which is not actionable under 42 U.S.C. § 1983, *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 684 (1976) (*but see Owen v. City of Independence*, 560 F.2d 925 (8th Cir. 1977), *vacated on other grounds*, 438 U.S. 902, 98 S.Ct. 3118, 57 L.Ed.2d 1145 (absence of nexus between stigmatizing remark by one official and discharge by second official)), the speech does not stigmatize plaintiffs because it does not identify them as responsible for what the Governor termed the "serious economic situation confronting the Banco Obrero and the Banco de Cooperativas." The speech refers to the "deep professional unconcern," "irresponsibility," and "immorality that has surrounded the handling" of bank funds. Blame is placed, at one point or another, on "the forces that rule a country"; the ruling class "composed of a self-serving group of individuals"; individuals with close ties to officials, directors or persons in high government spheres; and one person who treated the Banco Cooperativas as " 'his bank' in the selfish and immoral sense of the phrase." Plaintiffs are neither named nor identified.

post-termination hearing affording plaintiffs an opportunity to clear their names was required. Section 768a is unconstitutional insofar as it is construed to empower the Secretary to remove elected directors on the stigmatizing ground set forth without affording them notice of the charges against them and a reasonably prompt post-termination hearing.

■ We turn next to the question of relief. As their primary remedy, plaintiffs seek reinstatement to their positions as directors; in the alternative they ask for damages. We need not decide whether or not directors removed pursuant to § 768a would ever be entitled to reinstatement as that remedy is not now appropriate. The terms to which plaintiffs were elected by the shareholders have long since expired, and other elected directors are now serving. It would be an unwarranted interference with the bank's internal affairs to order plaintiffs' reinstatement.

Neither party has briefed or argued the issue of damages, and at this stage we cannot determine whether or not plaintiffs are entitled to more than nominal damages. *Perez v. Rodriguez Bou*, 575 F.2d 21 (1st Cir. 1978). We therefore remand this issue to the district court but with several observations. The significant due process violation which occurred here was not the removal itself but the failure to accord plaintiffs a more detailed notification of charges and a reasonably prompt post-termination hearing at which to clear their names. Hence, "the remedy mandated by the Due Process Clause of the Fourteenth Amendment is 'an opportunity to refute the charge'" of dishonesty. *Codd v. Velger*, 429 U.S. 624, 627, 97 S.Ct. 882, 883–884, 51 L.Ed.2d 92 (1977) *quoting Roth v. Board of Regents*, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). *See also Cox v. Northern Virginia Transportation Commission*, 551 F.2d 555, 559 (4th Cir. 1976) (compensatory damages for injury to reputation denied). The record does not indicate whether or not plaintiffs ever requested a post-termination hearing, and plaintiffs do not ask for one now. It is very questionable whether plaintiffs may elect to bypass this primary remedy, assuming the Commonwealth is now willing to grant a hearing, and collect damages in the alternative. If, however, the district court determines that due to the Commonwealth's continued refusal, lapse of time, or other reason not due to plaintiffs' volition, a hearing now would be impossible or ineffectual, damages may be proper. In that event, however, the court must carefully ascertain whether any damage to plaintiffs' reputations stemmed from the failure to accord plaintiffs a hearing.

■ In the absence of proof of injury[4] resulting from the procedural due process violation, damages other than nominal damages are generally not appropriate. *Carey v. Piphus*, 435 U.S. 247, 260, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Thus, if the alleged tarnish of plaintiffs' reputations would have occurred even had plaintiffs been afforded an appropriate hearing, plaintiffs' reputations have not been damaged by the due process violations.[5] This would be the case, for example, if the Secretary had sufficient evidence of plaintiffs'

---

4. On the present record it is not clear to what extent, if any, plaintiffs have suffered any injury flowing from the denial of procedural due process. The magistrate found and the plaintiffs have not disputed that plaintiffs retained the same employment after their removal as prior thereto. The magistrate further found "that [plaintiffs'] standing in the community has remained intact" and that "[t]here was no showing that defendant's action had impaired plaintiffs' ability to earn their chosen profession"; hence, he reasoned plaintiffs had sustained no harm to their reputations. As the district court concluded no liberty interest was at stake, it did not pass upon the latter findings. Plaintiffs argue that under Puerto Rico

law there is a presumption that damage has been suffered as a result of the Secretary's action. Whether or not plaintiffs' assertion is correct, it does not follow that said damage was caused by the specific denial of procedural due process which occurred here—the absence of a reasonably prompt post-termination hearing at which plaintiffs would have been afforded an opportunity to · meet the Secretary's charges.

5. Plaintiffs, however, may still recover for mental and emotional distress actually caused by the denial of procedural due process upon proof thereof. *Carey v. Piphus*, 435 U.S. at 263–64, 98 S.Ct. 1042. *See also Perez v. Rodri-*

dishonesty at the time of discharge and if plaintiffs' then available rebuttals would have been ineffectual. We leave final determination of these matters to the district court which will have the benefit of the parties' input on the subject.

The issue of attorneys' fees is also remanded for determination by the district court in accordance with our guidelines set forth in *King v. Greenblatt*, 560 F.2d 1024 (1st Cir. 1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161.

*Reversed.*

## ON PETITION FOR REHEARING

PER CURIAM.

■ This case was brought, and heard, to determine plaintiffs' rights under 7 L.P.R.A. § 768a as established by Article 18A of Law No. 94 of May 31, 1976. Thereafter the case was briefed and argued on appeal on the same basis. Defendants have now filed a petition for rehearing on the ground that, four days before plaintiffs were removed from office section 768a had been amended by Law No. 16 of May 5, 1977. This rewrote the statute, in the disjunctive, instead of in the conjunctive, in a matter that figured in our opinion.

It does not follow that we should grant the petition. Even under the amended statute, it is a close question, given the accompanying circumstances, whether there was not such a stigma as to give rise to the due process rights discussed in our opinion. In any event, we find defendants' failure to call our attention to the amended language inexcusable.

Defendants, by virtue of their official positions, were no strangers to the banking laws. Their counsel was not some fly-by-night, but the Solicitor General of the Commonwealth. After taking the time of a magistrate, a district judge, and a court of appeals, they offer no explanation why they were not familiar with their own statutes; not even an apology. Instead, their petition concludes with the extraordinary statement that "[e]ven though no mention of the amended law, applicable in this case, was made either in appellants' or appellees' brief, the same was fully discussed at the hearing of the case held on November 7, 1978 before this Honorable Court."

The court has no such recollection. Rather, defendants' counsel presented the court with individual copies of the May, 1976 law, with no indication of any change. Black does not become white with the stroke of a pen. Seldom, if ever, do we grant petitions to rehear matters which were not presented merely because of some counsel's oversight. By the same token, where so elementary an error is committed as the failure to acquaint the court with the text of a controlling amendment, particularly one to which we have no ready access except through the parties, this is not excusable neglect. *Cf. Spound v. Mohasco Industries, Inc.*, 1 Cir., 1976, 534 F.2d 404, 411, *cert. denied*, 429 U.S. 886, 97 S.Ct. 238, 50 L.Ed.2d 167. We find it an intolerable imposition on our time and limited resources to grant a rehearing for the purpose of entertaining arguments addressed to that hitherto undisclosed statute. The case stands on the statute prior to the amendment and the district court is instructed so to regard it.

*Petition denied.*

---

guez Bou, 575 F.2d at 25 (general discussion of the award of substantial compensatory dam-

ages for intangible loss of civil rights or purely mental suffering).