**Nicholas D. MARINO**

v.

**G. Roger BOWERS, George M. Metzger, Joseph F. Catania and John Welsh, Individually and as Members of the Board of Commissioners of Bucks County.**

**Civ. A. No. 79–2419.**

United States District Court,
E. D. Pennsylvania.

Jan. 31, 1980.

Norman C. Henss, Thomas N. Abbonizio, Philadelphia, Pa., for plaintiff.

James M. Penny, Jr., Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

Plaintiff in this civil rights action was fired from his position as maintenance manager of parks and recreation for Bucks County, Pennsylvania, on February 10, 1976, by defendants, all present or former members of the Bucks County Board of Commissioners. Marino alleges that he was fired solely because he is a member of the Democratic party, and does not support the Republican party, to which all of the defendants belong. On June 29, 1979, Marino filed this suit, contending that his dismissal violated his First Amendment rights to free speech and political association; denied him due process of law; and violated 42 U.S.C. §§ 1983, 1985, 1986, and 1988. Defendants move to dismiss the complaint under Rule 12(b)(6), F.R.Civ.P., for failure to state a claim upon which relief can be granted.

### First Amendment Claim

Defendants first argue that Marino has failed to state a claim under the First Amendment, because Marino's dismissal was lawful under federal and Pennsylvania law when it occurred, and the landmark decision of *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), which held "patronage" dismissals unconstitutional, should not be given retroactive effect. *Elrod* was not decided until June 26, 1976, more than four months after Marino had been fired. The factors to be considered in determining whether a precedent-setting decision should be applied retroactively are set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971):

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective application will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity.

404 U.S. at 106–07, 92 S.Ct. at 355 (citations omitted).

With respect to the first criterion, I am satisfied that *Elrod* decided an "issue of first impression whose resolution was not clearly foreshadowed." Until *Elrod,* it was plain that dismissal of "at will" employees for patronage purposes was permissible under Pennsylvania law. *AFSCME v. Shapp,* 443 Pa. 527, 280 A.2d 375 (1971). *See Scott v. Philadelphia Parking Authority,* 402 Pa. 151, 166 A.2d 278 (1960); *Mahoney v. Philadelphia Housing Authority,* 13 Pa.Comm.

243, 320 A.2d 459 (1974). Numerous federal courts had also rejected constitutional challenges to such dismissals. *Nunnery v. Barber,* 503 F.2d 1349 (4th Cir.), *cert. denied,* 420 U.S. 1005, 95 S.Ct. 1448, 43 L.Ed.2d 763 (1974); *Alomar v. Dwyer,* 447 F.2d 482 (2d Cir. 1971), *cert. denied,* 404 U.S. 1020, 92 S.Ct. 683, 30 L.Ed.2d 667 (1972); *Young v. Coder,* 346 F.Supp. 165 (M.D.Pa.1972); *Mason v. Delaware County,* 331 F.Supp. 1010 (E.D.Pa.1971); *Norton v. Blaylock,* 285 F.Supp. 659 (D.Ark.1968), *affirmed,* 409 F.2d 772 (8th Cir. 1969). The dissenters in *Elrod* emphasized the majority's radical break from precedent as an argument against declaring patronage firings unconstitutional. (Burger, C. J., Dissenting), 427 U.S. at 325, 96 S.Ct. 2673; (Powell, J., Dissenting), 427 U.S. at 376–77, 96 S.Ct. 2673.

Marino argues that the defendants should have foreseen the holding of *Elrod,* because one circuit court of appeals had already ruled patronage firings unconstitutional before he was fired, *Illinois State Employees Union v. Lewis,* 473 F.2d 561 (7th Cir. 1972), *cert. denied,* 410 U.S. 943, 93 S.Ct. 1370, 35 L.Ed.2d 609 (1973), and because the Supreme Court had granted *certiorari* in *Elrod.* However, "[e]very decision of the Supreme Court is foreshadowed to some extent by the fact that an issue is sufficiently unsettled to be litigated to the point of review before the Court. Obviously, this is not sufficient to deem the decision retroactive, or there would be no retroactivity doctrine." *Raggio v. Matunis,* No. 76–3132 (E.D.Pa. Nov. 5, 1979), (Cahn, J.), slip op. at 3–4.

Regarding the second *Huson* criterion, Marino contends that *Elrod* must be applied retroactively in order to remedy past wrongful firings. However, the second element of the *Huson* test is not whether retroactivity is essential to cure past "injustice," a test which would require retroactive application in most instances. Rather, the test is whether retroactivity is necessary to accomplish the purpose of the *Elrod* decision, and I see no reason why retroactive application is necessary to insure future adherence to the *Elrod* rule. *Ramey v.*

*Harber,* 589 F.2d 753, 758 (4th Cir. 1978); *Litwhiler v. Hilday,* 429 F.Supp. 984, 986 (M.D.Pa.1977).

With respect to the third criterion set forth in *Huson,* Marino argues that there is no evidence of record that retroactive application of *Elrod* would work substantial hardship on the defendants or on third parties. Notwithstanding that there may be no personal liability on the individual defendants, retroactive application would nevertheless produce inequitable results, particularly as to third parties. Patronage dismissals have long been recognized as lawful, and the defendants, as well as other government officials similarly situated, have relied upon this rule of law in hiring and firing. Retroactive application of *Elrod* would effectively penalize those who relied upon prior law. Moreover, it is clear that reinstatement of Marino would require either that his successor be dismissed, or that Bucks County taxpayers be saddled with more than one maintenance manager of parks and recreation.

Marino alleges in his complaint that patronage hiring is a practice of long-standing in Bucks County, and it is plain from this and other allegations that he was himself a patronage employee. Marino stresses the "injustice" of his firing, but I am inclined to agree with the Pennsylvania Supreme Court that, as an equitable matter, "[t]hose who, figuratively speaking, live by the political sword must be prepared to die by the political sword." *AFSCME v. Shapp, supra,* 443 Pa. at 536, 280 A.2d at 378. *See also Raggio v. Matunis, supra,* slip op. at 4.

Finally, I must consider the severe impact of retroactivity upon the workload of the courts. *Ramey, supra,* 589 F.2d at 760. Marino asserts that retroactive application of *Elrod* will not result in a flood of lawsuits because most claimants will be barred by the statute of limitations. However, Marino himself brought suit more than three years after his dismissal, and given the prevalence of patronage, there are countless other potential plaintiffs who could, if *Elrod* were retroactive, bring similar suits.

Only one federal court to date has explicitly held *Elrod* to be retroactive. *Retail Clerks Intern. Assoc. v. Leonard,* 450 F.Supp. 663 (E.D.Pa.1978). As I noted in *Boyce v. School District of Philadelphia,* 447 F.Supp. 357, 360–61 (E.D.Pa.1978), I believe that in reaching this conclusion the *Leonard* court misinterpreted *Rosenthal v. Rizzo,* 555 F.2d 390 (3d Cir. 1977). In my view, the circuit court never reached the issue of retroactivity in *Rosenthal,* so that it is not authoritative precedent on this issue. *Accord, Ramey v. Harber, supra; Raggio v. Matunis, supra.*

■ The other federal courts which have considered the retroactivity issue have all held *Elrod* nonretroactive. *Ramey v. Harber, supra; Raggio v. Matunis, supra; Litwhiler v. Hilday, supra.* Having analyzed *Elrod* in accordance with the Supreme Court's criteria in *Huson,* I agree that it should not be given retroactive effect.

Marino further argues that even if *Elrod* is not retroactive, earlier First Amendment decisions support his cause of action. Specifically, he relies upon *Boyce v. School District of Philadelphia, supra,* in which I held that a School District employee's allegations that she was fired in retaliation for making statements critical of the city administration stated a cause of action under *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

■ The instant case is distinguishable from *Boyce.* There, the plaintiff was not dismissed because of party affiliation, as both the plaintiff and those who fired her were Democrats. She was fired in direct retaliation for an exercise of her First Amendment right of free expression. Here, Marino was not singled out for any particular statements he made; he was the victim of a classic patronage firing. At least until *Elrod,* the law recognized a distinction between direct interference with First Amendment rights, *e. g., Boyce,* and the indirect "penalty" placed on First Amendment rights by patronage, which

was tolerated as part of our political system. Thus, I reject Marino's contention that he has stated a First Amendment claim exclusive of *Elrod.*

### Section 1985

Marino also contends that the defendants conspired to deprive him of his civil rights in violation of 42 U.S.C. § 1985(3). The Supreme Court has interpreted § 1985(3) as requiring that there be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Defendants argue that the kind of invidious bias necessary to trigger § 1985 is not present here.

In *Carchman v. The Korman Corporation,* 594 F.2d 354 (3d Cir. 1979), the Court of Appeals considered the scope of § 1985. Plaintiffs in *Carchman* were tenants of a luxury apartment complex who alleged under § 1985 that the landlord refused to renew their lease in retaliation for their attempts to organize a tenants' advocacy group. The court noted that discrimination based upon race or gender clearly falls within § 1985, because such discrimination is based upon "'immutable characteristics' for which the members of the class have no responsibility," and because blacks and women "have been the victims of historically pervasive discrimination." 594 F.2d at 356. Since tenant organizers did not share any of these characteristics, the court refused to declare them a protected class under the statute.

■ I agree with defendants that discrimination against the members of a rival political party in connection with patronage practices is not the kind of invidious discrimination prohibited by § 1985. Unlike race or gender, a person's party affiliation is not an immutable characteristic resulting

from an accident of birth for which a person bears no responsibility. Moreover, there is no history of continuous discrimination against the members of any particular party: the political parties have been equally affected by, and equally guilty of, patronage firings. Marino's own allegations undercut his contention that there is pervasive, class-based discrimination against members of the Democratic party, inasmuch as he benefited from the patronage system himself. Accordingly, I hold that Marino has failed to state a claim under § 1985.

### Sections 1986 and 1988

■ Marino also contends that he has stated claims under 42 U.S.C. §§ 1986 and 1988. *A fortiori,* a claim under § 1986 cannot exist because Marino has failed to state a claim under § 1985. *Brawer v. Horowitz,* 535 F.2d 830, 841 (3d Cir. 1976); *Kedra v. City of Philadelphia,* 454 F.Supp. 652, 662 (E.D.Pa.1978). Moreover, Marino's § 1986 claim is untimely, because he waited for more than one year to file suit. 42 U.S.C. § 1986.

■ With respect to Marino's § 1988 claim, defendants are correct that § 1988 creates no independent cause of action, but merely authorizes resort to state law and the common law when federal procedures or remedies are inadequate to provide relief. *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). Thus, § 1988 is of no assistance to Marino except to the extent that he otherwise states a claim upon which relief can be granted.

### Due Process

Marino also alleges that his firing offends principles of procedural due process under the fourteenth amendment,[1] because he was "summarily" fired without notice or a hearing.

---

1. When the defendants first filed their motion to dismiss, they did not address the procedural due process issue. Because I was unable to determine whether Marino intended to raise a procedural due process claim in his amended complaint, I communicated with counsel to ask their understanding. Marino's counsel stated that he had intended to state a procedural due process claim in the amended complaint (as he had done in the original complaint), and the parties then addressed this issue.

In order to invoke the procedural due process protections of the fourteenth amendment, a public employee must have a legitimate claim of entitlement to his job rising to the level of a liberty or property interest. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Whether a public employee has such a claim of entitlement is decided "by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Rosenthal v. Rizzo*, 555 F.2d 390 (3d Cir. 1977).

Under Pennsylvania law, "an appointed employee takes his job subject to the possibility of summary removal by the employing authority. He is essentially an employee-at-will." *Scott v. Philadelphia Parking Authority*, 402 Pa. 151, 154, 166 A.2d 278, 280 (1960). *Accord, Mahoney v. Philadelphia Housing Authority*, 13 Pa. Comm. 243, 320 A.2d 459 (1974), *cert. denied*, 419 U.S. 1122, 95 S.Ct. 806, 42 L.Ed.2d 822 (1975). Therefore, "unless the legislature has expressly provided tenure for a given class of employees," they may be summarily dismissed without a showing that there is cause for their dismissal. *Rosenthal v. Rizzo, supra*, 555 F.2d at 392. In the instant case, the Pennsylvania statute that provides for the hiring of park maintenance personnel like Marino does not provide tenure for such employees. *See* Pub.L. 323, Act of August 9, 1955, 16 Pa.Stat.Ann. § 2511. Accordingly, since Marino has failed to establish a legitimate claim of entitlement to his job, he cannot claim that his dismissal violated the fourteenth amendment.

Defendants' motion to dismiss will be granted.