**George F. HUFF, Plaintiff,**

v.

**COUNTY OF BUTLER and Merl T. Roth, Leon Gant, Jr. and James A. Green, County Commissioners, and Robert W. Cyphert, Clerk of County of Butler, Defendants.**

**Civ. A. No. 81-269.**

United States District Court, W. D. Pennsylvania.

Oct. 26, 1981.

Gwilym A. Price, III, Pittsburgh, Pa., for plaintiff.

William C. Robinson, Butler, Pa., for defendants.

## OPINION

ZIEGLER, District Judge.

### I. *History of Case*

Plaintiff, George Huff, alleges that on or about March 29, 1977, he was hired by Butler County as Purchasing Director. The job involved supervision of the Purchasing Department, as well as procurement of materials and supplies, and inventory control. Plaintiff contends that he was periodically evaluated in accordance with the policy of Butler County, was found to be satisfactory, and remained in position until October 3, 1980.

On that date, the events which spawned this lawsuit began to unfold. Robert W. Cyphert allegedly appeared at plaintiff's office and, purporting to act on behalf of the County Commissioners and Butler County, presented Huff with an ultimatum: either to resign immediately or be fired. The reason given, according to plaintiff, was that a female employee under plaintiff's supervision had made several complaints of harassment by Huff, and a second female employee had lodged a complaint of "sexual harassment" against him.[1] Cyphert also allegedly told Huff that the County desired to avoid problems with "Federal Auditors," and thereupon gave plaintiff the option of resigning voluntarily, or being fired without unemployment compensation benefits. No hearing was held on the charges.

Huff asserts that, although the charges were false, he signed a letter of resignation, particularly because he feared the loss of unemployment compensation. A letter of resignation, marked here as plaintiff's exhibit 1, was drafted and signed, specifically stating that, "I do not agree to the charges that have caused this resignation."

Plaintiff claims that soon after his forced resignation, sordid rumors and innuendos circulated throughout the community, to the effect that Huff had been dismissed for "sexual harassment." Stories also circulated that he had propositioned or made lewd advances to female employees under his

---

1. The complaint also states that Cyphert mentioned that Huff was difficult to locate during business hours and spent too much time without his office.

supervision. Huff avers that publication of these charges, as well as their distortion, was caused by defendants.

Plaintiff instituted this civil action pursuant to 42 U.S.C. § 1983[2] asserting that, because the accusations which led to his forced resignation were damaging to his character and reputation, he was entitled to notice and a hearing before being compelled to resign. Huff contends that defendants deprived him of his constitutional right to liberty without procedural due process, and now seeks reinstatement, damages, and an opportunity for a full hearing.

Currently before the court is the motion of defendants to dismiss for failure to state a claim upon which relief can be granted. Defendants argue that plaintiff has failed to demonstrate a property interest in his employment, and thus is without the guaranty of procedural due process as embodied in the Fourteenth Amendment of the Constitution. For the reasons elucidated below, we will deny the motion of defendants because plaintiff has stated a cognizable claim under § 1983 and the Fourteenth Amendment.

## II. *Discussion*

A property interest has been found to exist where by statute, rule, or contract, an employee may be discharged only for cause. *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). A constitutionally protected property interest has not been recognized where an employee serves at the will and pleasure of a public employer. *Bishop v. Wood*, 426 U.S. 341, 343–347, 96 S.Ct. 2074, 2076–2078, 48 L.Ed.2d 684 (1976).

■ In the instant matter, it is clear that Huff has no property interest in the employment position from which he was allegedly forced to resign. Under Pennsylvania law, a public employee, such as plaintiff, "takes his job subject to the possibility of summary removal by the employing authority. He is essentially an employee-at-will." *Scott v. Philadelphia Parking Authority*, 402 Pa. 151, 154, 166 A.2d 278, 280 (1960); *Marino v. Bowers*, 483 F.Supp. 765, 770 (E.D.Pa.1980).[3]

Because plaintiff was a non-contractual, at-will employee of the County of Butler, we find no right to continued employment which could constitute a property interest. Thus, we agree with defendants that Huff may not contend that his "property" was denied without due process of law.

■ However this has never been plaintiff's contention. Plaintiff specifically alleges in his complaint that his forced resignation, amidst accusations of "sexual harassment," operates to deprive him of his "liberty" without due process "in that the accusations were stigmatizing and damaging to his character and reputation in the community."[4] We conclude that plaintiff has stated a valid cause of action under the Civil Rights Act and the Fourteenth Amendment, in alleging that he has been denied liberty without due process of law.

■ The Supreme Court has decreed two ways in which an employee's Fourteenth Amendment liberty interest may be implicated, thus triggering the guarantees of procedural due process. First, entitlement to a hearing accrues if, in making a decision to terminate employment, charges are made which might seriously damage the employee's standing and association in the community. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). Second, the safeguards of the due process clause attach if the state, in dismissing the employee, "imposed upon him a stigma or other disability that foreclosed his freedom to take advan-

**2.** Jurisdiction is predicated on 28 U.S.C. §§ 1331 and 1343(3).

**3.** Only where the legislature has expressly provided tenure for a given class of public employees are such employees contractually entitled to a hearing prior to dismissal. *See Rosenthal v. Rizzo*, 555 F.2d 390, 392 (3d Cir. 1977).

Here, there is no suggestion that Huff's position was tenured or accorded specific legislative protection. In fact, plaintiff admits that he was a "non-contractual, at-will" employee in his brief.

**4.** Plaintiff's complaint at paragraph 18.

tage of other employment opportunities." Id. As the Court stated in *Roth*:

> The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the non-renewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.'

408 U.S. at 564, 92 S.Ct. at 2703, *quoting Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515.

■ Numerous cases subsequent to *Roth* have held that a public employee who is discharged amidst allegations of dishonesty or immorality is entitled to a hearing, assuming the employee can demonstrate that those allegations had some stigmatizing effect. *Cox v. Northern Virginia Transp. Commission*, 551 F.2d 555, 558 (4th Cir. 1976); *Abeyata v. Town of Taos*, 499 F.2d 323, 327 (10th Cir. 1974); *Hostrop v. Board of Junior College Dist. No. 515, Etc., Ill.*, 471 F.2d 488, 494 (7th Cir. 1972); *An-Ti Chai v. Michigan Technological University*, 493 F.Supp. 1137, 1155–1156 (W.D.Mich.N.D.1980).[5] Similarly, courts have suggested that due process requires a hearing where an employee is discharged in the wake of stigmatizing charges of fraud,[6] dishonesty in conducting financial affairs,[7] untruthful-

ness,[8] mental illness,[9] racism,[10] felonious conduct,[11] and moral unfitness and distribution of pornography.[12]

Some confusion has emerged in this jurisprudence as the result of the Supreme Court's decision in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In that decision, authored by Justice Rehnquist, the Court restricted to some extent the ability to pursue an action under Section 1983 for alleged injury to reputation. The majority concluded that injury to a person's reputation alone constituted neither liberty nor property within the meaning of the due process clause. The Court held that in addition to the alleged defamation of the individual, there must also exist "an accompanying loss of government employment," or deprivation of some "right or status previously recognized by state law." 424 U.S. at 709–711, 96 S.Ct. at 1164–1165.

In reviewing *Board of Regents v. Roth* and other earlier decisions relating to the breadth of the guaranty of procedural due process, Justice Rehnquist noted:

> [I]t was not thought sufficient to establish a claim under § 1983 and the Fourteenth Amendment that there simply be defamation by a state official; the defamation had to occur in the course of the termination of employment. Certainly there is no suggestion in *Roth* to indicate that a hearing would be required each time the State in its capacity as employer might be considered responsible for a statement defaming an employee who continues to be an employee.

---

5. The purpose of such notice and hearing is solely to provide the discharged employee with an opportunity to clear his or her name. *Board of Regents v. Roth, supra*, 408 U.S. at 573 n.12, 92 S.Ct. at 2707 n.12; *See also Codd v. Velger*, 429 U.S. 624, 627, 97 S.Ct. 882, 883, 51 L.Ed.2d 92 (1977).

6. *McNeil v. Butz*, 480 F.2d 314, 319–320 (4th Cir. 1973); *Rolles v. Civil Service Commission*, 512 F.2d 1319 (D.C.Cir.1975).

7. *Rodriquez de Quinonez v. Perez*, 596 F.2d 486 (1st Cir. 1979); *Cox v. Northern Virginia Transp. Commission*, 551 F.2d 555 (4th Cir. 1976).

8. *Huntley v. Board of Education*, 493 F.2d 1016 (4th Cir. 1974).

9. *Lombard v. Board of Education*, 502 F.2d 631, 637–38 (2nd Cir. 1974), *cert. denied* 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975).

10. *An-Ti Chai v. Michigan Technological University*, 493 F.Supp. 1137, 1155 (W.D.Mich., N.D.1980); *Wellner v. Minnesota State Junior College*, 487 F.2d 153 (8th Cir. 1973).

11. *United States v. Briggs*, 514 F.2d 794, 798 (5th Cir. 1975).

12. *McGhee v. Draper*, 564 F.2d 902, 916 (10th Cir. 1977).

*Paul v. Davis, supra,* 424 U.S. at 710, 96 S.Ct. at 1164.[13]

It is important to stress, however, that the holding of *Paul v. Davis* was limited to defamation without any employment termination and, in our view, it does nothing to vitiate Huff's claim in the instant case.[14] Huff has alleged that the County of Butler and the other named defendants forced his resignation, without a hearing, based upon charges that he sexually harassed female employees. Plaintiff also alleges that sordid tales of his "immoral" activities spread throughout the Butler community as a result of the publication by his erstwhile employer, and thereby tarnished his reputation in the community. Under *Roth* and its progeny, this type of alleged dismissal, amidst potentially stigmatizing charges of immorality, is sufficient to implicate the guaranty of procedural due process embodied in the Fourteenth Amendment.[15] Although plaintiff still bears the burden of proving these allegations by a preponderance of the evidence, he has at this juncture succeeded in stating a cause of action under 42 U.S.C. § 1983 and the United States Constitution.

The motion of defendants to dismiss this action for failure to state a claim upon which relief can be granted will be denied.

---

**13.** *Paul v. Davis* involved the posting of a list of active shoplifters by Kentucky police officers in approximately 800 neighboring business establishments. Davis was charged with shiplifting, and his name and picture were posted on the bulletin without notice or hearing. The Court found that no liberty or property interest was implicated under the due process clause.

For criticism of Justice Rehnquist's opinion, *see* Shapiro, *Mr. Justice Rehnquist: A Preliminary View,* 90 Harv.L.R. 293, 322–38 (1976); *The Supreme Court, 1975 Term,* 90 Harv.L.R. 58, 86–104 (1976).

**14.** Even after *Paul v. Davis,* the Supreme Court has reiterated that if a government-employer creates and disseminates a false and defamatory impression about the employee in connection with his termination, a hearing is required. *Codd v. Velger,* 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977). *See also Ventetuolo v. Burke,* 596 F.2d 476, 483 (1st Cir. 1979).

**15.** For a case similar to the one at bench, *see McGhee v. Draper,* 564 F.2d 902 (10th Cir. 1977), which was decided after *Paul v. Davis.*