John T. Nicodem, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania State Police, Respondent.

324

Argued December 17, 1981, before President Judge CRUMLISH and Judges ROGERS and CRAIG, sitting as a panel of three.

*Stephen Cohen, Cohen & Protasio,* for petitioner.

*Francis X. O'Brien, Jr.,* Assistant Attorney General, with him *John L. Heaton,* Assistant Attorney General, for respondent.

OPINION BY JUDGE CRAIG, January 28, 1982:

John Nicodem appeals a decision of the Pennsylvania State Police Commissioner upholding the action of a court-martial board which discharged former trooper Nicodem on the basis of five violations of Pennsylvania State Police Field Regulations.

At the inception of the proceedings, Nicodem had been directed by letter of March 15, 1979 to attend a disciplinary board hearing at 10:30 a.m. on April 2, 1979, at Montoursville, to answer charges which included alleged violations of political activity prohibitions and other infractions. The letter advised Nicodem that his rights with respect to the hearing were set forth in Field Regulation 3-3, that the date of the hearing was firm, and that a continuance would be granted "only under extraordinary circumstances;" the letter also stated that, "if a continuance is requested or you are unable or unwilling to appear as scheduled, a Limited Discretion Hearing will be conducted to determine continued duty status. . . ."

On April 2, 1979, at 9:00 a.m., Nicodem and his counsel appeared instead in federal court in Harrisburg, at a hearing on Nicodem's motion to stay the disciplinary proceedings.[1]

Nicodem did not ask for a continuance of the disciplinary board proceeding, and did not attend it or send a representative. The board therefore held a limited discretion hearing and suspended Nicodem without pay.

Another letter directed Nicodem to attend a second disciplinary board hearing on April 16, 1979, to con-

---

[1] The federal district court refused to stay the disciplinary proceedings.

sider the charges. In this hearing, Nicodem, with counsel, fully participated. Four of the five members of the second disciplinary board had also been members of the disciplinary board on April 2. After hearing the evidence, the second disciplinary board recommended that a court-martial board decide the charges.

A court-martial board was convened to hear the charges against Nicodem. Pursuant to regulations, an assistant attorney general assisted the court-martial board. Nicodem, represented by counsel, fully participated in those proceedings, also. The court-martial board found Nicodem guilty of three charges[2] and recommended that he be dismissed.[3]

Nicodem first contends that he was denied due process because the limited discretion hearing was held when the agency knew that Nicodem and his counsel would be unable to attend due to the federal court hearing. However, because the conflicting federal court proceeding arose at Nicodem's own request, we reject the contention.

At the April 16 hearing, Nicodem challenged all of the disciplinary board members, asserting prejudice on the ground that some of the members had served on the initial disciplinary board, which had decided to suspend him, and had therefore formed opinions about the merits of the charges against him. However, at a limited discretion hearing, the disciplinary board does not decide the ultimate guilt or innocence of the charged officer. The regulations[4] provide that the disciplinary board is limited to determining whether there are reasonable grounds for believing that the charged officer cannot effectively carry out his or her duties.

---

[2] The state police withdrew one charge and the court-martial board found Nicodem not guilty of another.

[3] The court-martial board found Nicodem guilty of five specifications in support of the three charges, and recommended dismissal for each specification.

[4] Field Regulation 3-3, Section 3.05(c).

Hence, the overlapping disciplinary board membership did not deprive Nicodem of due process. In *Nagy v. Belle Vernon Area School District,* 49 Pa. Commonwealth Ct. 452, 458, 412 A.2d 172, 175-76 (1980) and *Penn-Delco School District v. Urso,* 33 Pa. Commonwealth Ct. 501, 514, 382 A.2d 162, 168 (1978), we have continued to follow *Spruce Hill Township School District v. Bryner,* 148 Pa. Superior Ct. 549, 556, 25 A.2d 745, 748-49 (1942), holding that participation preliminarily in the issuance of charges does not disqualify an official from sitting on the tribunal which subsequently hears and decides their merits.

Nicodem also claims a due process right to have interrogated the assistant attorney general assisting the court-martial board, to insure that attorney's neutrality. However, the court-martial board did not act arbitrarily in refusing to permit Nicodem's counsel to interrogate the assistant attorney general. The function of such counsel is limited to legal advice as to the hearing—with no participation in the deliberations[5]— and Nicodem does not assert that counsel made any error of law. Therefore, the interrogation of counsel would have been inappropriate.

As to the substance of the charges, the court-martial board found that Nicodem intentionally caused nominating petitions to be circulated on his behalf for the office of Sheriff of Northumberland County, that the petitions were filed with the county clerk of elections and that Nicodem did run for sheriff in a pri-

---

[5] The department's *Court-Martial Procedures Manual,* Section I(E) provides:

Assistance of the Attorney General's Office: The Court-Martial Board shall require that the testimony and evidence be relevant to the charges. The Commissioner may, at his discretion, request the Attorney General to assign counsel to advise the Board, but such counsel shall not participate in the interrogation of any witness, nor the deliberation of the Board.

mary election.[6] Therefore, the court-martial board held Nicodem guilty of violating the field regulation[7] which prohibits any member of the state police from running for political office.[8]

Nicodem's constitutional challenge to that conclusion is not well founded. *Farview State Hospital v. Urda,* 23 Pa. Commonwealth Ct. 607, 353 A.2d 61 (1976), *cert. denied,* 429 U.S. 1093. Governmental units may limit the political activities of their employees, *Broadrick v. Oklahoma,* 413 U.S. 601 (1973). The right of public employees to run for public office may be restricted when necessary to achieve a compelling public objective. *Morial v. Judiciary Commission of the State of Louisiana,* 565 F.2d 295 (5th Cir. 1977), *cert. denied,* 435 U.S. 1013 (1978).[9] Prohibiting state police from running for public office is rationally related to an important public interest.[10] A state police

---

[6] Because Nicodem testified that he knew that he was violating the field regulations by running for office, Nicodem cannot now assert that he had no notice that this political activity was prohibited. *McGowan v. Maryland,* 366 U.S. 420, 429-30 (1961).

[7] Field Regulation 1-1, Section 1.12 provides in pertinent part:

No Member of the Department shall . . . run for . . . a political office during his/her employment.

[8] In the charges before the court-martial board, Nicodem's political activities were also the basis for one of three specifications supporting the separate charge of violating lawful orders. The agency asserts that Field Regulation 1-1, Section 1.12, "Politics" is a lawful order and its violation will support both a charge of violating Section 1.12 and a charge of violating a lawful order pursuant to Field Regulation 1-2, Section 2.02. We find these charges to be redundant and will therefore treat Nicodem's political activities as supporting only the specific charge of violating Section 1.12. Our analysis of the charge of failure to obey lawful orders will be limited to the two other specifications.

[9] Also see *United States Civil Service Commission v. National Association of Letter Carriers,* 413 U.S. 548 (1973).

[10] We agree with the Commonwealth's statement that the actual and perceived integrity of the state police is no less a concern than that of the state judiciary, as in *Morial.*

member wields much discretion and authority; even the valid action of a candidate-police officer during a campaign could be misconstrued and thus be harmful to law enforcement. Hence, the state police restriction on running for political office is not constitutionally infirm.[11]

In response to the next contention, we conclude that, Nicodem having been stationed in Lycoming County when he ran for office in Northumberland County, the field regulation, prohibiting officers from running for political office in any jurisdiction without regard to the geographical scope of their duty assignments, is not overbroad, vague or ambiguous, but is narrowly drawn and reasonably necessary to further a compelling governmental interest.

The court-martial board's conclusions on the other violations, not involving political activity, must also be sustained.

On February 11, 1979, Nicodem had received a written order from his patrol supervisor, Corporal Barto, ordering Nicodem to submit a written explanation for his failure to comply with several department procedures during a burglary investigation that same day. Nicodem refused to comply with that order until the corporal should explain, in writing, why Nicodem's explanation was required. The board found that, by not submitting the requested explanation, Nicodem was guilty of failing to obey a lawful order.[12]

On February 23, 1979, at about 8:30 a.m., Nicodem had been called to Lieutenant Shaffer's office, where Shaffer presented Nicodem with the disciplinary action report filed by Corporal Barto, charging Nico-

---

[11] We need not reach the issue of whether Section 1.12 is ambiguous with respect to its prohibition against circulating political petitions.

[12] Failing to obey a lawful order is a violation of Field Regulation 1-2, Section 2.02.

dem with failing to obey Barto's order of February 11. Shaffer also told Nicodem that several citizen complaints had been filed against Nicodem and asked Nicodem for his version of the incidents involved. Nicodem indicated that he would not comment before he talked to an attorney. Shaffer ordered Nicodem to report back to Shaffer's office that same day. Instead of reporting back to Shaffer, Nicodem advised his immediate supervisor that he was reporting off duty due to hypertension and stress,[13] and then left the barracks without advising Shaffer. The court-martial board held that Nicodem was guilty of failing to obey a lawful order.

Although there is evidence that Nicodem was not feeling well and that he followed the regular routine for reporting off sick,[14] he was not justified in failing to notify the lieutenant who had given him the order; his departure, which could have been excused, thus became inexcusable. We affirm the court-martial board as to that charge.

The court-martial board also found that Nicodem knowingly misrepresented facts and entered false information on an initial crime report, pursuant to a burglary investigation. Therefore, the court-martial board held Nicodem to be guilty of violating the field regulations governing the preparation of reports.[15]

---

[13] This was Nicodem's first day on the job following a disability leave for a job-related back injury which he suffered on February 11.

[14] Field Regulation 1-2, Section 2.14 provides in pertinent part:
A Member who becomes ill while on duty and finds it necessary to leave an assigned post or duty shall report this fact to his/her immediate supervisor before leaving the assignment or post.

[15] Field Regulation 1-2, Section 2.28 provides in part:
Reports submitted by Members shall be truthful and no Member shall knowingly enter or cause to be entered any inaccurate, false, or improper information or date, or misrepresent the facts in any Department report. . . .

Nicodem argues that the charge of intentionally falsifying reports cannot stand because the agency arbitrarily decided not to follow its own procedures, thus violating Nicodem's constitutional rights of equal protection and due process. Nicodem contends that the report discrepancy notice procedures[16] should have been followed and that he should have been given an opportunity to correct the false entries.

Because the "Report Discrepancy Notice" is a mere management tool and there is no requirement that a reporting officer be given an opportunity to correct intentionally false information, we perceive no denial of due process. The record reveals that the manager of the business, the burglary of which Nicodem was assigned to investigate, complained that Nicodem deliberately included false information on the investigation report. This citizen complaint led to an official investigation which indicated that false statements were made. Where, as here, the officer reviewing the errant report has reasonable grounds to suspect that false information was intentionally provided, there is no denial of equal protection because the agency files disciplinary charges instead of pursuing what would be an inappropriate management procedure.

Because we have decided that there is at least one valid specification supporting each of the three charges appealed here, we affirm.

---

[16] The department's *Operations Manual*, Section 7-2, provides the standard operating procedures for field reporting. This section contains a "Report Discrepancy Notice" form, the purpose of which is stated as follows:

The Report Discrepancy Notice, Form SP7-0030 shall be used to establish a uniform procedure at all levels of supervision when returning reports requiring correction to the reporting member. This form provides supervisors with a management tool. . . .

332

#### ORDER

Now, January 28, 1982, the order of the Commissioner of the Pennsylvania State Police, dated July 20, 1979, is affirmed.

Judge PALLADINO did not participate in the decision in this case.