Richard A. HOCH, Plaintiff,

v.

COUNTY OF FAYETTE, Richard D. Cicchetti, Fred C. Adams, Conrad D. Capuzzi, William J. Franks, Defendants.

Civ. A. 81–1574.

United States District Court,
W. D. Pennsylvania.

June 25, 1982.

Paul Bogdon, Pittsburgh, Pa., for plaintiff.

Arthur J. Murphy, Jr., and Judith H. Zernich, Charles W. Johns, Philadelphia, Pa., for defendants.

## OPINION

ZIEGLER, District Judge.

The plaintiff in this civil action, Richard A. Hoch, formerly served as an assistant in the Probation Office of the Court of Common Pleas of Fayette County, Pennsylvania. The position was court-appointed. In March of 1981, while so employed, Hoch announced his candidacy for the elected position of District Magistrate in the County of Fayette. He was then informed by defendant, the Honorable Richard D. Cicchetti, President Judge of the Court of Common Pleas of Fayette County, that plaintiff could not remain as an employee of the court while pursuing a candidacy for political office. The judge referred plaintiff to the decision of the Supreme Court of Pennsylvania in *In Re: Prohibition of Political Activities by Court-Appointed Employees,* 473 Pa. 554, 375 A.2d 1257 (1977). In that case, the highest appellate court of Pennsylvania unanimously affirmed the directives of its Administrative Office which prohibited political activity on the part of court-appointed employees. The court stated in its *per curiam* opinion:

These directives by the Court Administrator relative to court-appointed employees were issued with the knowledge and approval of this Court and correctly state the public policy and general principles involved. Indeed, none of the petitioners challenges the authority of Administrator's advices or questions the wisdom of the prohibitions therein set forth. The purpose of the Memoranda, of course, was to maintain not only the independence, integrity and impartiality of the judicial system, but also the appearance of these qualities. The vice of mixing political and judicial activity is too obvious to require elaboration here. Only by a steadfast separation of partisan political activity from the judicial function can the confidence of the public in courts and judges be merited and maintained.

473 Pa. 554, 375 A.2d at 1259–60.

Despite this admonition, Hoch continued to campaign for public office based on a recently enacted provision of the Public Officials Ethics Act, 65 P.S. § 410, which provides as follows:

Nothing in this Act, or in any other law or Court rule shall be construed to prohibit any constable or any employee of a Court of Common Pleas ... from also being an officer of a political body or political party as such terms are defined in ... the 'Pennsylvania Election Code,'

and the same may hold the office of a county, state or national committee of any political party, and may run for and hold any elective office, and may participate in any election day activities.[1]

When plaintiff refused to withdraw as a candidate, his employment was terminated with the Fayette County Probation Office, by order of court dated March 30, 1981.

Plaintiff instituted the instant civil action predicated on 42 U.S.C. § 1983 alleging that the County of Fayette, Pennsylvania, in terminating his employment acted under color of state law, and deprived him of his liberty and property without due process of law.[2] This court has jurisdiction by virtue of 28 U.S.C. § 1334. Presently before this court is the motion of defendants to dismiss for failure to state a claim upon which relief may be granted. For the reasons that follow, we find that plaintiff has failed to state a cause under 42 U.S.C. § 1983, and dismissal with prejudice is required.

## I.

■ The Fourteenth Amendment prohibits any state from depriving an individual of life, liberty or property without due process of law. The Supreme Court has repeatedly rejected the notion that every grievous loss visited upon a person by a state is sufficient to invoke the procedural protections of the due process clause. *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). Rather, the guarantees embodied in the clause come into play only when a decision of a state implicates some specific interest —life, liberty or property—within the meaning of the Fourteenth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 672, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1976).

■ We are first required to consider whether Hoch possessed a "property" interest in his job at the Fayette County Probation Office, so that the safeguards of the due process clause were triggered when the job was terminated. We conclude that plaintiff had no such interest.

Courts have found that an employee has a property interest in employment whereby statute, rule, or contract—the employee may be discharged only for cause. *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). On the other hand, a constitutionally protected property interest has not been recognized where an employee serves at the will and pleasure of a public employer. *Bishop v. Wood*, 426 U.S. 341, 343–47, 96 S.Ct. 2074, 2076–78, 48 L.Ed.2d 684 (1976).

Under Pennsylvania law, a public employee such as Hoch "takes his job subject to the possibility of summary removal by the employing authority. He is essentially an employee-at-will." *Scott v. Philadelphia Parking Authority*, 402 Pa. 151, 154, 166 A.2d 278, 280 (1960); *see also Marino v. Bowers*, 483 F.Supp. 765, 770 (E.D.Pa.1980). Because plaintiff was a non-contractual, at-will employee of the County of Fayette, there is no right to continued employment which could constitute a "property" interest within the meaning of the due process clause.[3]

## II.

We next consider whether plaintiff suffered a deprivation of "liberty" when he was terminated from his job, so as to implicate the guarantees of the due process. We think not.

■ The guaranty of "liberty" embodied in the Fifth Amendment, and later incorporated into the Fourteenth, was intended to

---

1. This section of the Ethics Code was enacted in October of 1978, over a year after the decision of the Pennsylvania Supreme Court in *In Re: Prohibition of Political Activities, supra.*

2. Plaintiff seeks various forms of relief, including reinstatement, compensatory and punitive damages, as well as attorneys' fees.

3. Only where the legislature has expressly provided tenure for a given class of public employees are such employees contractually entitled to notice and a hearing prior to dismissal. *Rosenthal v. Rizzo*, 555 F.2d 390, 392 (3d Cir. 1977). Here, there is no suggestion that Hoch's job was tenured or accorded specific legislative protection.

accord citizens at least the protection against governmental power that was enjoyed by their forefathers against the power of the Crown. The liberty preserved from deprivation without due process included the right "generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923); *Ingraham v. Wright, supra,* 430 U.S. at 672–73, 97 S.Ct. at 1413.

■ A precise definition of the word "liberty" is somewhat elusive and evanescent. Nevertheless, the Supreme Court in the last decade or so has made strides towards illuminating the concept. In the employment context, the Court has concluded that an employee's Fourteenth Amendment liberty interest may be implicated in one of two ways. First, an employee's liberty interest may be involved where—in making the decision to terminate an employee—charges are made which may seriously damage the employee's standing and association in the community. *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). Secondly, the safeguards of the due process clause may come into play where the state, in dismissing an employee, has "imposed upon him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Id.*

Thus cases subsequent to *Roth* have held that a public employee who is discharged amidst allegations of dishonesty or immorality is entitled to a due process hearing, assuming the employee can demonstrate that the allegations had some stigmatizing effect.[4] Similarly, courts have concluded that the process due requires a hearing where an employee is discharged in the wake of stigmatizing charges of fraud, or dishonesty in conducting financial affairs, or untruthfulness, mental illness, racism and felonious conduct, or distribution of pornography.[5]

■ In the instant case, Hoch was not dismissed amidst stigmatizing charges of this nature. Rather, the crux of plaintiff's contention is that he was discharged from employment with the Court of Common Pleas of Fayette County because he persisted in running for political office. While plaintiff, in his own mind, undoubtedly views his termination as a blow to his reputation, this is not the type of stigmatizing allegation—akin to a charge of immorality or dishonesty—which may trigger the safeguards of the due process clause. Only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination are the safeguards of the due process clause implicated. *Codd v. Velger,* 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1976).[6]

In short, plaintiff's contentions here boil down to a complaint that the Court of Common Pleas, in dismissing Hoch, acted upon a faulty reading of Pennsylvania law. But allegations of error in applying state law—while weighty matters—do not rise to the level of constitutional infractions. The proper avenue of relief is resort to the state courts.

We conclude that the allegations in the complaint do not form the basis for a suit under Section 1983 of the Civil Rights Act.

### III.

We wish to comment, however, that plaintiff's attempt to bring this action before a federal forum—under the auspices of a 1983 claim—is not surprising. On one hand, Hoch is confronted with an Adminis-

---

4. *See, e.g., Cox v. Northern Virginia Transp. Commission,* 551 F.2d 555, 558 (4th Cir. 1976); *Abeyata v. Town of Taos,* 499 F.2d 323, 327 (10th Cir. 1974).

5. See cases collected in *Huff v. County of Butler,* 524 F.Supp. 751, 754 (W.D.Pa.1981).

6. The Supreme Court has made clear that the purpose of requiring notice and a hearing in such cases is solely to provide the discharged employee with an opportunity to clear his or her name. Once this opportunity is afforded, the state remains free to terminate the employment for other reasons. *Board of Regents v. Roth, supra,* 408 U.S. at 573, n.2, 92 S.Ct. at 2707, n.2.

trative Directive and an opinion of the highest court of Pennsylvania, which proscribe political activity under certain circumstances. On the other hand, he is able to cite, in very clear language, the words of a statute enacted by the General Assembly, which specifically authorize such conduct under the same circumstances.[7] Moreover plaintiff is confronted with a very recent opinion of the Supreme Court of Pennsylvania, in which the court summarily upheld the termination of a court employee who sought political office, that fails to resolve the plain inconsistency between the prior decisions of that court and the newly-enacted state statute. *See Novalski v. Barbieri*, 487 Pa. 589, 410 A.2d 768 (1980). We can only echo the concerns expressed by Justice Robert Nix of the Pennsylvania Supreme Court writing in dissent in *Novalski*:

> [A] most difficult issue is presented by the obvious conflict between a legislative mandate and a court rule.
>
> The failure to resolve these questions leaves petitioners at a loss as to what their rights are and why their request for relief was denied. In my judgment the Court's action is not only jurisprudentially unsound, but also reflects a failure of the responsibility owed by an employer to the employee. Today's result does not permanently avoid the resolution of these complex and difficult issues. As demonstrated by the frequency of cases in this Court concerning the rights of Traffic Court employees to run for public office, see *In re Novalski, supra; Ottaviano v. Barbieri, supra; In re Prohibition, supra* these issues will perpetually haunt this Court until they are ultimately resolved.

487 Pa. at 591–592, 410 A.2d at *769*.

In a classic essay written in 1897, and delivered at Boston University, Oliver Wendell Holmes, Jr., discussed the function of the American legal system: "People want to know under what circumstances and how far they will run the risk of coming against what is so much stronger than themselves

... The object (of the law), then, is prediction, the prediction of the public force through the instrumentality of the courts."[8] And Professor Harry W. Jones of Columbia Law School explicated:

> Life in society is limited and unimaginative if men and women cannot plan their future conduct with reasonable assurance that the rules will not be changed after a commitment or investment, of effort or money, is made. Crusty old Jeremy Bentham ... put 'security,' in the sense of security of individual expectations, at the first place in his hierarchy of law's social values ...
>
> For, make no mistake about it, security of expectations is not just a rich man's value. It can be even more important to a poor person or a person of moderate means. If I have twenty substantial property or contractual interests, and one goes sour on me, I may be angered or inconvenienced, but I am not impoverished. But if I have only one or two more humble expectations—a pension, seniority in my job, the promise of a small legacy, an assurance of child support payments, or a low-rent long-term lease on my apartment—disappointment of that expectation can be disastrous.[9]

We today reach the conclusion that plaintiff has failed to state a cause of action under Section 1983 of the Civil Rights Act, or any other federal law. We are hopeful, however, that the Pennsylvania courts will give swift and careful consideration to this important issue, when plaintiff pursues this issue in a proper forum, since the jobs and livelihoods of individual citizens may rest on resolution of the tension between judicial and legislative pronouncements that are patently inconsistent.

A written order will follow.

---

7. This statute, as we have noted, was enacted in late 1978, well after the decision of the Supreme Court of Pennsylvania in *In Re: Prohibition of Political Activities, supra*.

8. Holmes, *The Path of the Law*, 10 Harvard Law Review 457 (1897).

9. Jones, *An Invitation to Jurisprudence*, 74 Columbia L.R. 1023, 1026–27 (1974).