Theodore GIGLIO, Plaintiff,

v.

SUPREME COURT OF PENNSYLVANIA and The Court of Common Pleas of Lackawanna County, Defendants.

Civ. No. 87–1053.

United States District Court, M.D. Pennsylvania.

Aug. 10, 1987.

---

David Cherundolo, Scranton, Pa., for plaintiff.

Howland W. Abramson, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Defendants' have filed a motion to dismiss this action in which plaintiff, a Lackawanna County probation officer, seeks to restrain defendants from discharging him because he is seeking public office as a district justice. For the reasons that follow, defendants' motion will be granted and the action will be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

The backdrop of this case is the Pennsylvania Supreme Court's eleven-year-old prohibition against political activity by court-appointed employees. On March 3, 1976, the Court Administrator of Pennsylvania issued the following memorandum to all judges and justices of the peace in the Commonwealth:

Questions have been raised concerning the employment by judges and justices of the peace of persons who are actively engaged in partisan political activities. Complaints have been received that per-

sons are employed in judicial systems at the County level with the Courts of Common Pleas, justices of the peace, or constables and that such persons are holding posts as committee persons and ward leaders. In addition, some of these individuals actively serve at the polls on Election Day as watchers or perform other functions of a political nature.

Such employment is improper, and those concerned with such employment, either as employers or employees, are hereby advised that, unless such party or political affiliation or activity is terminated within the next 30 days, such persons must be removed from judicial employment.

The Court Administrator next issued a supplemental memorandum to all president judges within the Commonwealth on May 7, 1976. This supplemental memorandum read in part:

The memorandum [of March 3, 1976] was issued as a reminder to judges and district justices of the peace that they and their staffs should remain free from any political activity. It was also intended that district court administrators and their staffs would be subject to the prohibitions in the memorandum.

On March 18, 1977, the Court Administrator issued a second supplemental memorandum. This second supplemental memorandum was addressed to all judges and district justices in the Commonwealth and stated in part:

This Supplemental Memorandum is a reminder to judges and district justices of the peace that they and their staffs must remain free from any political activity. Persons employed in sensitive positions in the court system must not engage in partisan politics. This would preclude lawclerks, court administrators and secretarial employees from being committee-persons, working at the polls or running for public office.[1]

*Court-appointed Employees,* 473 Pa. 554, 375 A.2d 1257 (1977).

The three memoranda were in direct conflict with the Ethics Act, Act of October 4, 1978, P.L.

1. The parties have not provided the court with the text of any of the three relevant memoranda set forth above. The quoted portions of the three memoranda were taken from the decision in *In re Prohibition of Political Activities by*

The directives of the Court Administrator were "issued with the knowledge and approval of", and "reaffirmed" by, the Pennsylvania Supreme Court in *In re Prohibition of Political Activities by Court-appointed Employees*, 473 Pa. 554, 375 A.2d 1257 (1977).

The facts of this case developed under the setting of the three memoranda cited above. Prior to June 29, 1987, plaintiff was employed as an Adult Probation Officer for Lackawanna County, Pennsylvania. After allegedly obtaining the permission of the President Judge of Lackawanna County to become a candidate for the office of district justice, plaintiff filed nominating petitions with the Election Bureau of Lackawanna County on March 9, 1987. On May 19, 1987, he gained the Republican nomination for the office of district justice.

On June 29, 1987, the Supreme Court of Pennsylvania issued an order in which it reaffirmed its policy against political activity by court-appointed employees. The Supreme Court also issued guidelines in order to clarify its prohibition, and these guidelines stated in part:

> The term "court-appointed employees" shall include, but is not limited to, all employees appointed to and who are employed in the court system, statewide and at the county level, employees of the Administrative Office of Pennsylvania Courts, Court Administrators and their employees and assistants, court clerks, secretaries, data processors, probation officers, and such other persons serving the judiciary.

*See* attachment no. 1 to plaintiff's complaint.

By letter dated July 20, 1987, the President Judge of Lackawanna County informed plaintiff that as a result of the Supreme Court's June 29, 1987 order, plaintiff would be removed from his position as an adult probation officer effective July 29, 1987 if he remained a candidate for public office. *See* attachment no. 2 to plaintiff's complaint.

Plaintiff instituted this lawsuit on July 29, 1987, alleging that the defendants' prohibition against his political activity violated his right of freedom of speech as guaranteed by the First Amendment through the Fourteenth Amendment. In his complaint, he sought a permanent injunction preventing the defendants from dismissing him from his employment as an Adult Probation Officer. Along with his complaint, he filed a motion for a temporary restraining order.

A telephonic conference was held on July 29, 1987 by the court with plaintiff's counsel and defendants' counsel. By order issued on the same date, the court denied plaintiff's request for a temporary restraining order. Specifically, the court stated that it was "not satisfied at this stage of the proceedings that there is a reasonable likelihood that plaintiff will succeed on the merits." *See* document 4 of the record at 2. Since the parties' counsel had agreed during the telephonic conference that no factual disputes exist in this case, the court directed all parties to submit legal memoranda by August 4, 1987 and to indicate if they desired the court to make a final determination based upon the August 4th submissions.

883, No. 170, § 1, 65 P.S. 401 *et seq.,* which provides in part:

Nothing in this act, or in any other law or court rule shall be construed to prohibit any constable or any employee of a court of common pleas, the Municipal Court of Philadelphia, the Traffic Court of Philadelphia, or any employee of a district justice from also being an officer of a political body or political party as such terms are defined in the ... "Pennsylvania Election Code," and the same may hold the office of a county, State or national committee of any political party, and may run for and hold any elective office, and may participate in any election day activities.

65 P.S. § 410. In *Snyder v. Commonwealth, Unemployment Compensation Board of Review,* 509 Pa. 438, 502 A.2d 1232 (1985), the Pennsylvania Supreme Court, relying upon Article V, § 10(c) of the Pennsylvania Constitution which allows the Supreme Court to prescribe general rules governing the practice, procedure and conduct of all courts of the Commonwealth, held that its directive forbidding partisan political activity by court-appointed employees has the full force and effect of law and suspended § 410 of the Ethics Act as it applied to any person affected by the March 3, 1976 directive.

The defendants' counsel filed a motion to dismiss and a memorandum of law in support thereof on August 4, 1987. Plaintiff's counsel filed a brief in support of a permanent injunction on the same date. The parties indicated that they desired the court to make a final determination based upon these submissions, and the present dispute is now ripe for consideration.

## DISCUSSION

The parties have presented two issues for determination by the court: (1) Does the Eleventh Amendment present a jurisdictional bar preventing the court from addressing the instant controversy? and (2) Does plaintiff state a cause of action under the First Amendment for which relief can be granted? [2]

*Eleventh Amendment*

The defendants maintain that the Eleventh Amendment bars this court from addressing the present dispute. This issue is controlled by the decision in *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984), wherein the United States Supreme Court reinforced the exception to eleventh amendment immunity which the Court first announced in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). That exception holds that the Eleventh Amendment does not bar suits seeking prospective injunctive relief against state officials whose actions violate the United States Constitution. The theoretical basis of the *Ex parte Young* doctrine is that a state official who committed an unconstitutional act can claim neither that his action was authorized by the state nor that he derives eleventh amendment immunity from the state. The court in *Pennhurst* explained:

> [W]hen a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief. Under the theory of *Young,* such a suit would not be one against the state since the federal-law allegation would strip the state officer of his official authority.

104 S.Ct. at 909.

The strongest argument presented in the cases cited by defendants in their memorandum [3] is that the members of a state supreme court are not "state officials" for purposes of the *Ex parte Young* doctrine. Under this rationale, the exception to eleventh amendment immunity under the *Ex parte Young* doctrine would not apply to state supreme court justices. *See, e.g., O'Connor v. Nevada,* 507 F.Supp. 546 (D.Nev.1981), *aff'd,* 686 F.2d 749 (9th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982) (Nevada Supreme Court was dismissed from action seeking prospective injunctive relief on eleventh amendment grounds; *Ex parte Young* exception did not apply since the Nevada Supreme Court justices were not state officials but rather were "arms of the state itself").

■ The issue in the present case, then, narrows to whether the justices of the Pennsylvania Supreme Court are state officials for purposes of the *Ex parte Young*

---

**2.** The court emphasizes that plaintiff has raised only a freedom of speech argument and has not asserted a property right in his position as an Adult Probation Officer nor claimed that his due process rights were violated. The job description attached to plaintiff's brief provides no indication that plaintiff possessed any property interest in his position; rather, the job description merely establishes the close relationship between probation officers and the county court. For a decision denying the due process claim of an assistant in the Fayette County Probation Office who was discharged pursuant to the Pennsylvania Supreme Court's prohibition against political activity by court-appointed employees, *see Hoch v. County of Fayette,* 541 F.Supp. 778 (W.D.Pa.1982) (Ziegler, J.).

Defendants' counsel did not raise the Eleventh Amendment issue during the July 29, 1987 telephonic conference, and plaintiff has not had an opportunity to address this question. In light of the court's determination on this issue, however, plaintiff need not be afforded an opportunity to address the applicability of the Eleventh Amendment.

**3.** All of the cases cited by defendants predate the decision in *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

doctrine. In *Fink v. Supreme Court of Pennsylvania,* 651 F.Supp. 1238, 1344–45 (M.D.Pa.1987) (Muir, J.), the court held that it had subject matter jurisdiction to issue a prospective injunction against the Pennsylvania Supreme Court to enjoin alleged unconstitutional activities by the Supreme Court. The district court stated:

> Any order from this court would be an order to comply with the mandate of the due process clause of the Constitution of the United States. Furthermore, the court in *Pennhurst* specifically stated that a suit challenging the constitutionality of a state official's action is not one against the state and as such is not barred by the Eleventh Amendment (citation omitted). Plaintiffs' case fits squarely into this exception. They are not attacking the Commonwealth or the laws of the Commonwealth but they are alleging that the Supreme Court of Pennsylvania ... acted outside both state and federal law. A United States district court may always act and indeed may be obliged to act when suit alleging violations of federal law is brought against state officials.

*Id.* at 1244. *See also Adams v. Supreme Court of Pennsylvania,* 502 F.Supp. 1282 (M.D.Pa.1980) (Nealon, C.J.) (court entertained request for prospective injunctive relief against Pennsylvania Supreme Court when the issue of eleventh amendment immunity was not raised by the parties). Therefore, the court concludes that members of the Pennsylvania Supreme Court were acting as state officials when issuing the directive restricting state employees from aspiring to public office.

Inasmuch as plaintiff seeks only prospective injunctive relief, *i.e.,* reinstatement to his position as an Adult Probation Officer,[4] and alleges that the defendants violated his right of freedom of speech under the First Amendment, and inasmuch as there is recent precedent from this district holding, at least by implication, that the justices of the Pennsylvania Supreme Court are "state officials" for purposes of the *Ex parte* *Young* doctrine, the court finds that the Eleventh Amendment does not deprive it of subject matter jurisdiction over this action.

*Plaintiff's First Amendment Claim*

■ Federal and state officials may regulate the first amendment rights of government employees to an extent greater than is appropriate for private citizens. *Adams v. Supreme Court of Pennsylvania, supra,* at 1292. The proper test to apply in addressing the merits of plaintiff's claim involves the balancing between his first amendment rights and the interests of the state judiciary which are at stake. *See Broadrick v. Oklahoma,* 413 U.S. 601, 606, 93 S.Ct. 2908, 2912–13, 37 L.Ed.2d 830 (1973); *United States Civil Service Commission v. National Association of Letter Carriers,* 413 U.S. 548, 564, 93 S.Ct. 2880, 2889–90, 37 L.Ed.2d 796 (1973); and *Adams v. Supreme Court of Pennsylvania, supra.*

The United States Supreme Court has on a number of occasions implemented the above test and upheld "resign to run" provisions which are similar to the Pennsylvania Supreme Court's prohibition against political activities for court-appointed employees. In *Broadrick v. Oklahoma, supra,* the Court sustained the constitutionality of a state statute which precluded state employees from engaging in partisan political activity, including running for public office. In *United States Civil Service Commission v. National Association of Letter Carriers, supra,* the Court ruled that a law barring partisan political conduct by federal employees is constitutionally permissible. Finally, in *United Public Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), the Court upheld a provision of the Hatch Act which forbids employees of the executive branch from taking part in the active management of political campaigns. *See also Adams v. Supreme Court of Pennsylvania, supra,* where the court rejected a challenge based on numerous constitutional grounds, including the First Amendment, to the Pennsylvania Su-

---

**4.** Plaintiff's complaint requests an injunction preventing the defendants from dismissing him from his employment. Since he has already been discharged, it is fair to read his complaint at this point as requesting an injunction ordering reinstatement.

preme Court's rule requiring district justices to resign their offices upon becoming candidates for political office. Thus, this court is convinced that "resign to run" prohibitions can constitutionally be made a condition of public employment.

Focusing upon the particular "resign to run" directive at issue in this case, the court notes that the Pennsylvania Supreme Court has twice examined the validity of its prohibition and has twice ruled that the prohibition is constitutional. *See Snyder v. Commonwealth, Unemployment Compensation Board of Review,* 509 Pa. 438, 502 A.2d 1232 (1985); and *In Re Prohibition of Political Activities by Court-appointed Employees,* 473 Pa. 554, 375 A.2d 1257 (1977). *See also Commonwealth ex rel. Specter v. Moak,* 452 Pa. 482, 307 A.2d 884 (1973) (court found that prohibition in Philadelphia Home Rule Charter prohibiting city employees from running for elective public office was a permissible restriction of first amendment rights).

This court agrees with the Pennsylvania Supreme Court that the prohibition in question against political activities by court-appointed employees is a permissible restriction of the employees' first amendment rights. First, the prohibition restricts only one of the wide variety of activities protected by the First Amendment. Second, the prohibition does not completely restrict plaintiff's right to run for political office—plaintiff had the options of resigning from his position or petitioning the Pennsylvania Supreme Court for an exemption and/or stay due to unusual circumstances in his situation.[5] Finally, the Pennsylvania Supreme Court's prohibition serves important state interests. As previously pointed out by this court, "resign to run" directives "help prevent the abuse of [court-appointed] office by candidates and former candidates and ... safeguard the appearances of propriety." *Adams v. Supreme Court of Pennsylvania, supra,* at 1292. *See also Morial v. Judicial Commission of the State of Louisiana,* 565 F.2d 295, 299–300 (5th Cir.1977), *cert. de-*

*nied,* 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed. 2d 395 (1978).

In conclusion, the court finds that the balance of interests involved in this dispute tips heavily in favor of defendants and against plaintiff. Consequently, the court will grant defendants' motion to dismiss. Plaintiff has presented several equitable arguments on his behalf. For example, he alleges that he obtained permission from the President Judge of Lackawanna County before commencing his campaign for the office of district justice, and plaintiff complains that the Pennsylvania Supreme Court did not specify that its prohibition applied to Adult Probation Officers until after he had already garnered the Republican nomination for the office of district justice. While these equitable considerations would have been relevant in a petition for an exemption and/or stay presented to the Pennsylvania Supreme Court, they do not enhance plaintiff's first amendment claim to which this court's inquiry is confined. Plaintiff, of course, is free to pursue any state remedy he may have in state court. Having determined that plaintiff fails to state a federal claim upon which relief could be granted, the court will dismiss his complaint.

An appropriate Order will follow.

---

**5.** During the July 29, 1987 telephonic conference, the defendants' counsel indicated that a number of state court employees have petitioned the Pennsylvania Supreme Court for an exemption and/or stay to allow them to run for political office.