**Porter E. KRISHER, Plaintiff,**

v.

**Ronald SHARPE, Robert G. Werts, Brook Young and Richard Mooney, Defendants.**

**Civ. A. No. 90–5594.**

United States District Court, E.D. Pennsylvania.

Feb. 15, 1991.

Richard J. Orloski, Allentown, Pa., for plaintiff.

Denise A. Kuhn, Philadelphia, Pa., for defendants.

---

FINDINGS OF FACT, DISCUSSION,
CONCLUSIONS OF LAW,
AND ORDER

HUYETT, District Judge.

This civil action raises the issue whether a Pennsylvania State Police regulation prohibiting a State Police Officer from running for political office violates the First Amendment of the United States Constitution. Plaintiff seeks a permanent injunction to enjoin defendants from enforcing Pennsylvania State Police Field Regulation 1–1, Section 1.12. Based upon the findings of fact stipulated to by counsel and conclusions of law, I deny plaintiff's motion for a permanent injunction, and dismiss his complaint.

## I.

Plaintiff's complaint requests a temporary restraining order, a preliminary injunction and a permanent injunction to prevent defendant's enforcement of Pennsylvania State Police Field Regulation 1–1, Section 1.12 against plaintiff. During a conference held with counsel for the parties on November 29, 1990, counsel agreed that the court need only consider the request for a permanent injunction. To that end, counsel also agreed to meet and prepare a stipulation of uncontested facts that would serve in lieu of a trial on plaintiff's request for a permanent injunction. *See* Order of November 29, 1990, *Krisher v. Sharpe, et al.*, CA 90–5594. In my Order of December 20, 1990 I approved a stipulation of uncontested facts submitted by counsel and ordered full and complete memoranda of law in support of the parties' positions.

## II. Findings of Fact

As agreed to and submitted jointly by counsel for the parties, the facts relevant to the disposition of this complaint are as follows:

1. The plaintiff is Porter E. Krisher, an adult individual residing at R.D. No. 6, Box 633, Allentown, Lehigh County, Pennsylvania.

2. The defendant, Colonel Ronald Sharpe, is an adult individual and, at all times herein relevant, was the Commissioner of the Pennsylvania State Police.

3. The defendant, Captain Robert G. Werts, is an adult individual and, at all times herein relevant, was Commanding Officer of Troop "M", Bethlehem, of the Pennsylvania State Police.

4. The defendant, Lieutenant Brook F. Young, is an adult individual and, at all times herein relevant, was a member of the Pennsylvania State Police's Bureau of Professional Responsibility.

5. The defendant, Captain Richard Mooney, is an adult individual and, at all times herein relevant, was a member of the Pennsylvania State Police's Bureau of Personnel.

6. At all times herein relevant, each and every defendant was employed by the Pennsylvania State Police ("PSP") and acted within the scope of his employment.

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 because the action is brought pursuant to 42 U.S.C. § 1983 for an alleged violation of the First Amendment to the United States Constitution.

8. On September 16, 1965, plaintiff became an enlisted member of the PSP.

9. Upon graduating from the PSP Academy, plaintiff was assigned to Troop "M", Bethlehem, and stationed at the Fogelsville Barracks. Plaintiff has been stationed at the Fogelsville Barracks for more than twenty-years. He currently holds the rank of trooper.

10. As a member of the PSP, plaintiff is subject to the PSP's internal rules and regulations governing members' conduct.

11. Field Regulation 1–1, Section 1.12, Politics, limits the political activities of PSP members as follows:

A member shall avoid all political or religious arguments while on duty. He/She shall not use his/her position for political influence. A Member shall not sign or circulate any political petition, or any other type of petition, in his/her capacity as a Pennsylvania State Police officer unless authorized by the Commissioner.

No Member of the Department shall be an officer in a political party or run for or hold a political office during his/her employment. No Member shall solicit any assessments, contributions or services for any political party. Nothing contained herein shall affect the right of a Member to hold membership in, and privately support, a political party; or to vote as he/she chooses; or to privately express his/her opinion on any political subject or candidate; or to maintain political neutrality; or to attend political meetings as a private citizen.

Field Regulation 1–1, Section 1.12 has been in effect in this form since January 13, 1975.

12. Despite Field Regulation 1–1, Section 1.12, from February 15, 1989 until March 1, 1989, plaintiff circulated two petitions to have his name placed on the official ballot as a Republican candidate in the primary election for the office of Upper Macungie Township Board of Supervisors, Lehigh County, Pennsylvania.

13. Plaintiff was aware of Field Regulation 1–1, Section 1.12 prior to circulating the petitions. Plaintiff was also aware that a former member of the PSP had been dismissed from the PSP for violating Field Regulation 1–1, Section 1.12 and other internal regulations.

14. On March 3, 1989, plaintiff filed the petitions under oath with the Lehigh County Board of Elections. On the petitions, plaintiff listed his occupation as a member of the PSP.

15. Sometime after March 22, 1989, the deadline for withdrawing as a candidate, plaintiff attempted to withdraw from the election, but he was unsuccessful.

16. Meanwhile, posters were printed up on plaintiff's behalf and publicly displayed. Articles appeared in *The Morning Call* listing plaintiff as a candidate from the township supervisor's office and quoting plaintiff as to his political views.

17. In the primary election held on May 16, 1989, plaintiff's name appeared on the voting machine ballot. Although he lost, plaintiff received 264 votes.

18. On May 22, 1989, the PSP's Bureau of Professional Responsibility ("Bureau") received an anonymous complaint which alleged that plaintiff had run for political office while employed by the PSP.

19. The Bureau assigned Lieutenant Brook F. Young to investigate the complaint.

20. On July 7, 1989, upon completion of the investigation, Captain Robert G. Werts, Commanding Officer of Troop "M", issued a Disciplinary Action Report to plaintiff charging him with a violation of Field Regulation 1–1, Section 1.12.

21. Thereafter, the Department Disciplinary Officer determined that the offense with which plaintiff was charged was a court-martialable [sic] offense.

22. From December 13, 1989 until April 29, 1990, plaintiff was placed on "restricted duty"—restricted to on-station duties—but he still retained the full powers of a PSP officer and received full pay.

23. A court-martial hearing was held on April 4, 1990.

24. PSP court-martial proceedings are legislatively governed by 71 P.S. § 251.

25. At the conclusion of the hearing, the three-member court-martial board, by unanimous vote, found that plaintiff ran for a political office during his employment with the PSP and, as such, was guilty of violating Field Regulation 1–1, Section 1.12. The board, again by unanimous vote, recommended that plaintiff be sanctioned with a ninety-day suspension without pay.

26. Commissioner Sharpe, as the final arbiter of the court-martial proceeding, basically adopted the board's findings of fact, conclusions of law and recommended sanction.

27. On April 25, 1990, the Commissioner suspended plaintiff from the PSP force without pay, effective April 29, 1990, for a total of ninety working days.

28. Thereafter, on May 11, 1990, the Supreme Court of Pennsylvania in *Commonwealth of Pennsylvania v. State Conference of State Police Lodges of the Fraternal Order of Police*, 525 Pa. 40, 575

A.2d 94 (1990), upheld an arbitration award which allowed PSP officers charged with offenses subject to court-martial proceedings between July 1, 1988 and June 30, 1990 to select grievance arbitration as an alternative to a court-martial.

29. All those members of the PSP who had been court-martialed between July 1, 1988 and June 30, 1990 were then notified of the opportunity to agree by the Commissioner's decision already imposed as a result of the court-martial proceeding or to grieve the penalty imposed by the Commissioner before an arbitrator.

30. Plaintiff was among those notified about the election of remedies and, on July 26, 1990, he selected the grievance arbitration procedure.

31. On September 1, 1990, plaintiff returned to full duty and full pay status with the PSP.

32. Plaintiff's grievance arbitration proceeding has yet to be scheduled.

33. When plaintiff's matter goes to arbitration, even if the arbitrator finds that plaintiff violated Field Regulation 1–1, Section 1.12, the arbitrator cannot impose a penalty greater than the penalty already imposed by the Commissioner.

34. Plaintiff, however, intends to run for political office again in the future.

35. Plaintiff alleges that Field Regulation 1–1, Section 1.12 violates his First Amendment rights of free speech and association.

36. Plaintiff alleges that Field Regulation 1–1, Section 1.12 is overbroad and may not be enforced consistent with the United States Constitution.

37. Plaintiff does not challenge that portion of Field Regulation 1–1, Section 1.12 which prohibits members of the PSP from holding political office during employment.

38. Plaintiff concedes that PSP officers who hold political office could compromise the PSP's interest in maintaining an appearance of impartiality in its officers' enforcement of the law.

39. As such, plaintiff concedes that the PSP has a legitimate and substantial interest in prohibiting its members from holding political office during their employment.

40. Plaintiff does, however, challenge that portion of Field Regulation 1–1, Section 1.12 which prohibits members of the PSP from running for political office during their employment.

41. As such, plaintiff contends that the PSP has no legitimate and substantial state interest in prohibiting its members from running for political office during their employment.

42. Plaintiff also argues that the PSP has no authority to enforce Field Regulation 1–1, Section 1.12 because the regulation was effectuated without any legislative authority.

43. The defendants, however, contend that the PSP does have legitimate and substantial state interest in prohibiting its members from running for political office during their employment for the following reasons:

a. Members of the PSP have a duty to impartially enforce and execute the laws of the Commonwealth of Pennsylvania. Members of the PSP cannot effectively carry out their law enforcement responsibilities and at the same time be a candidate for or hold political office.

The regulation prevents members of the PSP from utilizing their employment as police officers to favor those individuals who might aid them in their campaigns or adversely affect those individuals who oppose their campaigns. Even if the members do not actually favor or adversely affect certain individuals, the public may have that perception.

If a member of the PSP is publicly known to be politically aligned with a particular political party, the public will not perceive that member as an impartial law enforcement officer. That member will be perceived to be that political party's "watchdog." Members of the public who do not belong to that political party will be more suspect of that officer's traffic citations, investigations, arrests, charges, etc.

They will perceive the officer's actions as discriminatory against them. Members of the public who are served by the candidate-member may perceive that the jurisdiction which the candidate-member will serve will receive an additional level of police service from the PSP if the candidate-member is elected.

b. One of the goals of the PSP is to administer and enforce the laws of the Commonwealth of Pennsylvania in a neutral, even-handed manner. The PSP cannot carry out this goal if its members are publicly aligned with political parties. If members of the PSP are publicly aligned with political parties, the public will perceive the PSP itself as "backing" those persons and those parties as opposed to being a neutral law enforcement agency. Perhaps the most gross example would be if the Commissioner of PSP ran for Governor of Pennsylvania on the Democratic ticket. Then the public would perceive the entire PSP membership as backing the commissioner and the Democratic Party.

c. The PSP fears that if its members could run for or hold political office, they would face conflicts of interest between their duties to uphold the laws of the Commonwealth of Pennsylvania and abide by the internal rules of and regulations of the PSP and their allegiances to their parties.

A PSP member who is also a candidate for or holder of a political office may neglect his/her duties as a PSP officer in the interest of political office. For example, the speed limit on state highways is 55 miles per hour. A PSP member is sworn to enforce that speed limit. As a candidate for or holder of a political office, that same member may support a change in legislation to increase the speed limit to 70 miles per hour. The member's candidacy or office is then at odds with his/her PSP oath to uphold the laws of Pennsylvania.

Likewise, a PSP member who is a candidate or officeholder may advocate a political position directly contrary to PSP regulations. For example, Field Regulation 2–1, Section 1.03 prohibits members of the PSP from becoming involved in matters regarding the formation or funding of local police departments. In this case, plaintiff was running for the position of township supervisor in a township which does not currently have an organized police department and, as such, relies solely on the PSP for police protection. In an article which appeared in *The Morning Call* on May 4, 1989 at page 6, plaintiff stated, "The township is changing rapidly, and managing the growth—trying to anticipate the needs of the township—I think that takes a lot of consideration." Plaintiff further stated "I wouldn't want people to think that because I'm a police officer I'm going to say, 'Now we should get a police department.' When the residents are ready, I can aid them." Thus, if plaintiff had been elected to the township board of supervisors, there was a real likelihood that he would have become involved in a decision whether or not to create a local police department.

d. The regulation promotes integrity in discharging police duties by avoiding situations where members of the PSP could utilize their positions to attempt to influence or to actually influence members of the public to support them in their political campaigns. The PSP fears that, if it allows its members to run for or hold political office, those members will use their positions to coerce members of the public to register in particular political parties, sign their nominating petitions and/or vote for them in elections. Even if there is no actual coercion, influence or intimidation, the PSP fears that will be the public's perception.

e. The PSP seeks to attract qualified persons through guaranteeing job security free from the political arena. If the PSP allowed its members to run for or hold political office, its ranks could become filled with political officeholders. How one rose within the ranks of the PSP could then become dependent upon their party affiliation. For example, troopers serve an eighteen-month probationary period following their enlistment. At the end of the eighteen-month period, the probationary trooper's co-troopers, supervising corporals, sergeants, station lieutenant and troop commander make recommendations as to

whether the PSP should retain the probationary trooper as a permanent member. If the PSP became too laden with political officeholders, its members might begin to consider political affiliations in deciding matters of retention.

f. Members of the PSP have access to confidential Criminal History Record Information. A member of the PSP who runs for political office could use such confidential information, to the extent that it exists, against an opponent or a member of the opponent's family during an election.

g. The PSP wants to avoid any perception by members of the public that how they act politically will affect their relationship with the PSP. For example, the PSP does not want members of the public to believe that if they do not vote for a member-candidate they will be subject to greater law enforcement scrutiny by the PSP. Likewise, the PSP wants to avoid the perception that members of the public who do sign a petition or vote for a member-candidate will receive more favorable treatment from members of the PSP.

### III. Discussion

■ Plaintiff argues initially that the Pennsylvania State Police restrictions on running for public office as stated in Field Regulation 1–1, Section 1.12 violate his First Amendment rights of free speech and association. At the outset I note that the Supreme Court observed in *United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 567, 93 S.Ct. 2880, 2891, 37 L.Ed.2d 796 (1973) that "[n]either the right to associate nor the right to participate in political activities is absolute in any event." There, the Court upheld as constitutional § 9(a) of the Hatch Act, 5 U.S.C. § 7324(a)(2), which, *inter alia*, barred specified federal employees from holding a party office or working at voting polls. Accordingly, the Court characterized this provision as unquestionably valid and stated that it would uphold as constitutional a statute that "in plain and understandable language ... forbade activities such as ... becoming a partisan candidate for, or campaigning for, an elective

public office...." *Id.* at 556, 93 S.Ct. at 2886.

The Court's approach in *Letter Carriers* was underscored in *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1970), holding that a state can restrict the partisan political activities, including becoming a candidate for nomination or election to any paid public office, of its classified civil servants without running afoul of the employee's First Amendment rights.

There is little doubt that the state can impose constitutionally permissible limitations on the partisan political activities of its employees. However, as reflected in the Court's reasoning in *Letter Carriers*, *supra*, to pass constitutional muster a balance between the rights of the employee and the interest of the state must be struck:

[T]he government has an interest in regulating the conduct and 'the speech of its employees that differ[s] significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the [government], as an employer, in promoting the efficiency of the public services it performs through its employees.' *United States Civil Service Commission v. National Association of Letter Carriers*, *supra*, 413 U.S. at 564, 93 S.Ct. at 2890 (quoting *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)).

This test was applied in *Giglio v. Supreme Court of Pennsylvania*, 675 F.Supp. 266 (M.D.Pa.1987), where plaintiff unsuccessfully challenged the constitutionality of memoranda of the Pennsylvania Supreme Court forbidding him to run for the office of district justice while employed as a state probation officer ("The proper test to apply ... involves the balancing between [plaintiff's] first amendment rights and the interests of the state ... which are at stake.") *Id.* at 270. Similarly, in *Adams v. Su-*

*preme Court of Pennsylvania,* 502 F.Supp. 1282 (M.D.Pa.1980), a District Justice unsuccessfully challenged the constitutionality of a Pennsylvania law requiring him to resign his office when he became a candidate for Congress. ("[T]he proper test involves a balance between the individual's First Amendment rights and the interests the government has at stake.") *Id.* at 1292.

As marshalled in the stipulated findings of fact, several state interests are at stake in enforcing the Field Regulation 1–1, Section 1.12 ban on an employee running for political office while employed as a State Trooper. For example, the state argues that the regulation at issue prevents troopers from using their broad discretionary powers as law enforcement officers to garner favors from potential constituents and other interested persons or from meting out punishment to political opponents and their supporters. (FF¶ 43a.) In a similar vein, the goal of the State Police to enforce laws in a neutral and evenhanded manner would be compromised if the individual troopers were to become aligned with political parties and their leaders. (FF¶ 43b.)

Law enforcement officers occupy a position of trust, which concomitantly carries privileges. State Police troopers have access to confidential Criminal History Record Information (FF¶ 43f.) and participate in and are privy to criminal investigations. If a trooper were to be allied with a particular political leader, he may be persuaded to supply confidential information about the criminal history of an opponent and his or her family and friends. Also, if no prohibition existed as stated in Field Regulation 1–1, Section 1.12, criminal investigation and prosecution of political corruption may be compromised.

Regardless of whether these activities would actually occur, permitting troopers to run for political office would to some extent undermine public confidence in the state police and cultivate a public perception of politically motivated law enforcement. (FF¶ 43g.) This would severely undercut the effectiveness of the state police and in no small measure lessen the ability of the state police to attract qualified candidates. (FF¶ 43e.)

Plaintiff concedes that troopers should not be permitted to hold political office because this could compromise the state police's interest in maintaining an appearance of impartiality in its officers' enforcement of the law (FF¶ 38.) and that the PSP has a legitimate and substantial interest in prohibiting its members from holding political office during employment (FF¶ 39.). However, plaintiff fails to explain why the state's interests in support of a ban on troopers from holding office do not apply with equal force in determining whether the state may bar troopers from running for political office. Moreover, I find no palpable distinction that would lessen the application of these state interests in preventing either course of conduct. Assuming *arguendo* that a trooper was permitted to hold political office, his or her conduct would be scrutinized by the press and public. In contrast, if a trooper was permitted to run for political office and lost the election, he or she could quietly engage in some of the pernicious activities outlined above (FF¶ 43.) in hope of garnering support and eventually winning an election.

Field Regulations 1–1, Section 1.12 limits a trooper's First Amendment right to run for political office. However, this limitation is outweighed by the state's legitimate and substantial interest in preventing potential abuse by troopers in carrying out their duty to enforce the law in an evenhanded and neutral manner and safeguards the appearance of propriety. *See Nicodem v. Com., Pennsylvania State Police,* 64 Pa.Commonwealth Ct. 323, 439 A.2d 1325 (1982) ("A state police member wields much discretion and authority; even the valid action of a candidate-police officer during a campaign could be misconstrued and thus harmful to law enforcement. Hence the state police restriction on running for political office [Field Regulation 1–1, Section 1.12] is not constitutionally infirm." *Id.,* 439 A.2d at 1328.). Therefore, Field Regulation 1–1, Section 1.12 does not unconstitutionally infringe on plaintiff's First Amendment rights.

Plaintiff challenges the scope of Field Regulation 1–1, Section 1.12 as overbroad and therefore facially unconstitutional. In *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), the Court stated, "where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.* at 615, 93 S.Ct. at 2918. In consonance with this principle, the Third Circuit for the Court of Appeals in *Aiello v. City of Wilmington, Delaware*, 623 F.2d 845 (1980), restated its approach to the "substantial overbreadth test" as follows:

> When faced with an overbreadth challenge a court must decide, first if there is a legitimate and substantial state interest in regulating a class of speech, and, if so, whether that interest is being 'pursued by means that broadly stifle fundamental and personal liberties when the end can be more narrowly achieved.' (citations omitted) *Id.* at 855.

In discussing the First Amendment rights of public employees, the court noted that "[t]he area of unregulable speech available to public employees is ... narrower than that available to the public at large." *Id.*

As already established, I find that Field Regulation 1–1, Section 1.12 serves a legitimate and substantial interest of the state. After balancing this state interest against the interest of the individual's First Amendment rights, this regulation does not unconstitutionally infringe on plaintiff's First Amendment rights. Turning next to the breadth of the regulation, I find that the regulation's proscription against running for political office is tailored as narrowly as is possible to achieve its intended result. ("No Member of the Department shall ... run for ... political office during his/her employment." Field Reg. 1–1, Section 1.12). A less restrictive alternative would have a deleterious effect upon the state's legitimate concerns for even-handed law enforcement and the appearance of propriety.

Indeed, this regulation explicitly preserves the right of employees to participate substantially in political activities. ("Nothing contained herein shall affect the right of a Member to hold membership in, and privately support, a political party; or to vote as he/she chooses; or to privately express his/her opinion on any political subject or candidate; or to maintain political neutrality; or to attend political meetings as a private citizen." Field Reg. 1–1, Section 1.12). In this regard, plaintiff fails to present a single example of a potentially invalid application of this regulation. *See Aiello v. City of Wilmington, Delaware*, 623 F.2d 845 (3d Cir.1980). Hence, I find this regulation is not substantially overbroad.

Finally, plaintiff argues that defendant's regulation must fall because it was not legislatively enacted. I disagree. Regulations of this nature have been routinely upheld as valid exercise of authority. *See Aiello v. City of Wilmington, Delaware*, 623 F.2d 845 (3d Cir.1980) (Rules and Regulations of the Bureau of Fire of City of Wilmington, Delaware); *Giglio v. Supreme Court of Pennsylvania*, 675 F.Supp. 266 (M.D.Pa.1987) (Memoranda of the Pennsylvania Supreme Court); *Nicodem v. Com., Pennsylvania State Police*, 64 Pa.Commonwealth Ct. 323, 439 A.2d 1325 (1982) (Pennsylvania State Police Field Regulations 1–1, Section 1.12).

### IV.  Conclusions of Law

1.  Field Regulation 1–1, Section 1.12 does not violate plaintiff's First Amendment rights to free speech and association.

2.  Field Regulation 1–1, Section 1.12 is neither overbroad nor in violation of the First Amendment.

3.  Field Regulation 1–1, Section 1.12 is not infirm because it was not legislatively enacted.

4.  Plaintiff's motion for a permanent injunction is denied.

5.  Plaintiff's complaint is dismissed.

6.  Judgment shall be entered in favor of the defendants.

IT IS SO ORDERED.